Filed 5/28/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B246217 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA041187) |
| v. | |
| ROBERT G. KENDRICK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Renee Rich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part B of the Discussion.

# INTRODUCTION

Pursuant to a plea agreement, defendant Robert G. Kendrick, represented by counsel, pled guilty to two counts of committing a lewd act upon a child (§ 288, subd. (a).)[1] The trial court sentenced defendant to a 10-year state prison term but suspended execution of sentence and placed defendant on formal probation for five years. The probationary term included the condition that he not use the Internet without prior approval of his probation officer. Defendant did not object to this condition of probation. Three years later, the trial court found defendant in violation of probation because he had used the Internet without obtaining permission. The trial court revoked and terminated probation and lifted the stay of execution on the 10-year sentence.

In this appeal, defendant raises two contentions. The first is that the probation condition precluding access to the Internet without prior authorization is unconstitutional. In the published portion of this opinion, we find that this contention has been forfeited because it was not raised in the trial court. We therefore do not consider it on the merits. In the non-published portion of this opinion, we consider defendant's second contention that the trial court abused its discretion in revoking and terminating his probation. We find no abuse of discretion and therefore affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Plea and Initial Sentencing*

In May 2008, the People filed a 28-count information alleging that defendant had engaged in unlawful sexual acts with two young teenage girls he had taught horseback riding.

---

[1] All statutory references are to the Penal Code.

In November 2009, the parties reached a negotiated settlement. Defendant, represented by counsel, was advised of and waived his constitutional rights and pled guilty to two counts of committing a lewd act upon a child (§ 288, subd. (a).) The parties stipulated that the preliminary hearing transcript and probation report contained the factual basis of the pleas.

The trial court sentenced defendant to a 10-year term but suspended execution of sentence. The court informed defendant that it was very reluctant "to go along with this plea agreement." The court stated: "I'm very concerned with your conduct in this case. The probation officer does not feel that you are a suitable candidate for probation [but] should [instead] be sent to state prison.[2] I'm going to give you a shot on probation, but let me make it very clear: If you violate your probation in any way, . . . you will do ten years in state prison without question. . . . [Y]our attorney assures me that I will never see you again, that you're going to go on the straight and narrow. I hope for your sake that's true because you will go for the ten years. [¶] Do you understand that?" Defendant responded: "Yes, I do."

---

**2**    The probation report explained: "The defendant[] is eligible for probation but is definitely not suitable. For years, the defendant preyed on young girls, attempting to get into their good graces and gain their trust, so that he could take advantage of them. He used his position and title of horse trainer to try to build these girls up emotionally and then verbally, physically, and sexually victimized them. [¶] The defendant has two prior rape allegations, which stands to prove that he has a pattern of this type of behavior. The defendant was just never caught for his actions until now. He is a sexual predator, who intentionally seeks out young, inexperienced girls for his own sexual gratification. The defendant is sophisticated enough to test the waters with all the girls he encounters to see just what he can get from them and how much they will give him. [¶] The defendant is a danger to the community and all the girls subjected to him. He should not be free in the community to further victimize or abuse any more young girls." The probation officer therefore recommended that defendant be sentenced to state prison.

3

The court placed defendant on a five-year formal probationary term that included multiple conditions.  The court informed defendant that the conditions included, inter alia, the requirement that he not "subscribe to or have access to any form of Internet service without the approval of [his] probation officer."  The court asked defendant if he understood "all of the terms and conditions of [his] probation."  Defendant replied that he did.  The court then asked him:  "And do you accept all the terms and conditions of your probation?"  Defendant replied: "Yes."  On the People's motion, the court dismissed the remaining counts.

2. *The First Probation Violation*

Within six months of the sentencing hearing, defendant violated probation by being within 100 yards of a locale frequented by minors.  In particular, defendant repeatedly loitered at a McDonalds inside of a Walmart, a location that gave him a "clear view of the Junior Miss clothing department."

In June 2010, the trial court conducted a probation violation hearing.  The court informed defendant that while it "could easily sentence [him] to ten years today," it was "willing to give [him] one more shot."  But that if defendant again violated probation, he was "going to state prison for ten years."  Defendant, represented by counsel, admitted the probation violation.  The court revoked and then reinstated probation on the same conditions with the additional provision that defendant serve 45 days in jail.

3. *The Second Probation Violation*

On July 26, 2012, defendant's probation officer Thomas Wubben filed a report with the court setting forth the following facts.  During two routine visits of defendant's home, Wubben "discovered the defendant had Internet access."  Defendant admitted to Wubben that "he was in Internet contact with an adult

4

female" with whom he intended to pursue "a relationship." Defendant "denied awareness he was not allowed to have Internet access [and] indicated [that] his prior supervision officer . . . had allowed him permission to use the Internet for the purpose of seeking employment opportunities."

At a hearing conducted that day (July 26), the trial court found, based upon the probation officer's report, defendant "preliminarily" in violation of probation. Defendant was remanded into custody and the court set the matter for a formal probation violation hearing.

On November 30, 2012, the trial court conducted the probation violation hearing. Three probation officers testified as did defendant.

The first witness, Robert Carpenter, had been defendant's probation officer from November 2009 to September 2011. He visited defendant at his residence shortly after defendant was placed on probation. Defendant showed him a desk top computer but indicated that he did not intend to use it because "it was too slow of a system." Carpenter told defendant that if he wanted to access the Internet, he was required to request permission from him (Carpenter). Defendant never sought permission to access the Internet and he (Carpenter) never gave defendant oral or written authorization to use the Internet. Carpenter testified that generally permission is granted only to permit a probationer to search for a job.[3]

Carpenter visited defendant's residence 12 to 15 times during his supervisory period. Carpenter testified that "[d]uring that period of time, most of the time it looked like [defendant] had little use of the computer. It was a very

---

[3] Carpenter explained: "[The probationer] has to explain to us how and when. He has to document his use. It has to be very specific and detailed. And also he is subject to search. We also have computer software that will search and find files that have been opened up or used from the Internet."

5

slow system. . . . [D]efendant himself admitted that it was slow and he did not use the system for much of anything, other than just anything off line."

The second witness, Wubben, became defendant's probation officer in September 2011. Wubben testified that defendant never asked permission to use the Internet for any purpose and he never gave defendant permission to use the Internet.

On April 23, 2012, Wubben and his partner, deputy probation officer David Scheivert, visited defendant's residence. Wubben saw a Facebook page displayed on defendant's computer.

On May 29, 2012, Wubben and Scheivert returned to defendant's residence. After Scheivert saw that defendant was accessing the Internet on the computer, defendant admitted to Wubben that he had been using the Internet to contact a woman.

Scheivert testified that during one of the two visits to defendant's home, defendant "said he used the computer. He turned it on. I [Scheivert] think he turned it on. He got it on line because I didn't know how to get it on line." After defendant activated the computer, a "pornographic image" "just popped up."

Defendant testified on his behalf as follows. He rented a room in a three-bedroom house. The landlady purchased the computer. The computer was not in his bedroom but, instead, in "a bedroom" called "the computer room." The computer had access only to a dial-up Internet. The landlady and Chuck Washington (a friend who visits him) had access to the computer.

Defendant is a veterinarian technician specialist. He claimed to use the Internet to find clients such as horse owners who would hire him to service their horses' teeth and hooves.

In regard to his probationary term, defendant was asked: "When you agreed to probation, one of your conditions of probation was not to use the Internet; is that

6

correct?" Defendant replied: "I was never told I couldn't. [¶] . . . I didn't get any conditions." In a similar vein, defendant testified: "I was told I had no restrictions" about Internet use. "I could use it for business."

Defendant gave inconsistent accounts as to his conversations with Carpenter about Internet use. First, defendant testified that when he initially met with Carpenter, he told Carpenter that he "was on the Internet" because he "needed to find some more clients" and that Carpenter replied: "[O]kay, . . . make sure [you] don't do anything else." Defendant further testified that each time Carpenter visited his home, Carpenter "check[ed] the computer [and] [a]fter he finished he said okay." But at another point, defendant testified: "They never said anything about me not being on the Internet, so I figured it was okay for me to be on the Internet. [¶] . . . [Carpenter] never said I could. He never said I couldn't."

Defendant denied ever having accessed Facebook on the computer. In regard to the April 23 visit by Wubben and Scheivert, defendant testified that Scheivert asked him to access the Internet. He complied, "got on Yahoo," and "[t]hat's when he found pictures of my girl friend. I never seen no porn pop up on my computer, ever."

In regard to the probation violation, the trial court ruled:

> "Clearly the defendant is in violation of his probation in this case. I do not find [defendant] to be a credible witness. Not only does he deny ever being told of those conditions or ever understanding them, again at sentencing it's clearly laid out that those were his conditions.

> "In addition, I find Deputy Probation Officer Carpenter highly credible and he said that he went over those conditions and explained that if he needed some sort of permission from the probation officer, how to go about it and what it would be granted for.

> "When the defendant testified, his testimony was that he thought, based on that conversation, that he could use the Internet for

7

work.  But yet what he admits to him is actually using the Internet to communicate with and receive photographs from his girlfriend, Lilly, who he met via the Internet.  And that he—I think his words were that he figured it was okay to be on the Internet, and it wasn't.  It was in direct violation of his probation in this case.

"So I do find him in violation of his probation."

As for sentencing, the court explained:

"I was the sentencing judge when [defendant] originally entered into his plea, which involved the dismissal of . . . about 27 counts against him.  He pled to two of the counts, received a 10-year ESS [execution of sentence suspended].  And I was very clear, as the sentencing judge, what that meant; that he had a 10-year state prison sentence hanging over his head.

"Notwithstanding that, [defendant] came before me previously on a probation violation that I actually considered very egregious, considering the charges here.  [Defendant] did not take responsibility for that.  And at the time, I gave him one more shot on probation.  And again, I was very clear that it was zero tolerance and that he had to obey all of the conditions of his probation.

"He comes before me again, for a violation that I do not consider technical or minor, considering the nature of the charges here.

"The sentence isn't imposed simply for the violation.  This is a sentence that was part of an agreed-upon disposition.  And the violation of that probation results in the state prison sentence that I am about to impose."

This appeal follows.

# DISCUSSION

## A. CONSTITUTIONALITY OF THE PROBATION CONDITION

Defendant contends that the "probation condition restricting [his] Internet usage must be vacated as it is unconstitutionally overbroad and the finding that [he] violated this condition of probation must be reversed."

The Attorney General urges that the contention has been forfeited because defendant did not raise this constitutional claim in the trial court although he had three opportunities to do so (when placed on probation and at his two probation violation hearings). Defendant responds that *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*) permits him to raise this constitutional claim for the first time on appeal. We conclude *Sheena K.* does not apply to this case because defendant is not raising a facial challenge to the probation condition. The claim, therefore, has been forfeited.

*People v. Welch* (1993) 5 Cal.4th 228 (*Welch*) held that a defendant's failure to object in the trial court to a probation condition he claimed was unreasonable resulted in a forfeiture of the right to raise that claim on appeal. *Welch* "reasoned that an adult probationer who elects to receive probation in lieu of incarceration fairly may be charged with the need to timely challenge any conditions imposed and that application of the forfeiture doctrine would deter the promulgation of invalid conditions in the trial court and decrease the number of appeals contesting such conditions." (*Sheena K.*, *supra,* 40 Cal.4th at p. 882.)

In *Sheena K.*, the issue was whether an appellant could raise for the first time on appeal the claim that a probation condition was *facially* unconstitutional because it was vague or overbroad. The court concluded that because the contention presented "a pure question of law, easily remediable on appeal by modification of the condition," it was not forfeited by the failure to raise it in the trial court. (*Sheena K., supra*, 40 Cal.4th at p. 888.) However, *Sheena K.*

9

cautioned that its "conclusion does not apply in every case in which a probation condition is challenged on a constitutional ground . . . 'since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." [Citation.]'" (*Id.* at p. 889.) *Sheena K.* "emphasize[d] that generally, given a meaningful opportunity, the probationer should object to a perceived facial constitutional flaw at the time a probation condition initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction." (*Ibid.*)

In this case, defendant's constitutional claim, as advanced in his briefs, is one that cannot be resolved "without reference to the particular sentencing record developed in the trial court [and thus does not] present a pure question of law." (*Sheena K.*, *supra,* 40 Cal.4th at p. 887.)

First, defendant argues that the restriction on Internet usage was "unconstitutionally overbroad as it was not narrowly tailored to serve a significant governmental interest. The probation condition was not related to [his] conviction and was not reasonably necessary for his rehabilitation or protection of the public as there was no evidence [he] had ever used the Internet for any criminal purpose." This claim, by its own terms, requires a review of the facts underlying his convictions, facts set forth in the transcript of the preliminary hearing and the probation report. Defendant concedes as much because he claims that "[t]here is no suggestion in the description of the underlying offenses in the probation report or at the preliminary hearing that [he] used a computer or the Internet in the commission of his crimes. . . . Moreover, the restriction is not related to [his] criminal history as he does not have a history of using the Internet to engage in

10

unlawful conduct. [¶] . . . Because [his] criminal conduct did not involve the use of a computer or the Internet, restricting his access to such had no bearing on his rehabilitation. . . . As there was no evidence [he] ever used a computer or the Internet to contact minors, obtain child pornography, or commit any crime, the probation condition restricting his use of the Internet was not reasonably related to protecting the public."

In addition, defendant cites to Carpenter's testimony that the probation department generally approves Internet usage only if an unemployed probationer is searching for a job. Relying upon that testimony, defendant argues: "Because the probation department would only approve Internet access for employment searches, [he] was prohibited from lawful and benign uses of the Internet, such as obtaining information from on-line news sources, checking traffic reports, getting directions or a weather report, taking on-line classes, or conducting on-line banking or financial transactions. . . . Such a broad restriction on [his] access to the Internet was an excessive deprivation of his liberty and violated his First Amendment rights." Building upon these arguments, defendant notes that "there is no indication the [trial] court considered less restrictive alternatives to the overbroad restriction on [his] access to the Internet."

Given his appellate arguments, it is apparent that defendant is not raising a pure facial challenge to the constitutionality of the probation condition that can be determined based on abstract or general legal principles. Instead, he advances fact-driven arguments to claim that, given the evidentiary specifics of the crimes, his criminal history, and the probation department's policy, the probation condition is, *as applied to him*, unconstitutional. Defendant essentially acknowledges this point when he concludes: "The trial court failed to engage in the necessary case-specific exercise of its discretion when it imposed the probation condition prohibiting [him] from accessing the Internet without his probation officer's approval." But the

11

reason the trial court failed to exercise that discretion is because defendant failed to raise these arguments below. If they had been raised, both the prosecutor and the probation department would have had the opportunity to respond. In turn, the trial court, taking all of these circumstances into consideration, could have exercised its discretion to decide whether to impose the probation condition and, if so, on what specific terms. We therefore conclude that defendant's failure to raise the constitutional claim in the trial court constitutes a forfeiture of his right to raise it on appeal. Furthermore, we decline defendant's request that we exercise our discretion to consider the forfeited contention.

Anticipating this conclusion, defendant urges that trial counsel's failure to make the appropriate objections at various stages of the case constitutes ineffective assistance of counsel. We are not persuaded. If, as here, the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate court must reject the claim of ineffective assistance unless there can be no satisfactory explanation for counsel's conduct.[4] (*People v. Mendoza Tello, supra,* 15 Cal.4th at p. 266.)

In this case, the record suggests two satisfactory explanations for trial counsel's decision not to contest the probation condition when defendant was first placed on probation.

The first is defendant's professed indifference to using the Internet. Shortly after he was placed on probation, defendant told Carpenter he did not intend to use the computer in his home because "it was too slow of a system." It is reasonable to infer that defendant had previously communicated this intent to trial counsel who,

---

[4]    If, as here, a satisfactory explanation appears for trial counsel's conduct, then the claim of ineffective assistance of counsel "is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) That petition should be filed first in the trial court. (*People v. Munoz* (1984) 157 Cal.App.3d 999, 1017; *Yokley v. Superior Court* (1980) 108 Cal.App.3d 622, 628.)

in turn, could have reasonably decided that there was no need to challenge the condition because defendant did not intend to use the Internet. (See *Strickland v. Washington* (1984) 466 U.S. 668, 691 ["The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly . . . on information supplied by the defendant."].)

The second is that trial counsel had already negotiated an extremely favorable disposition for defendant. The probation department had recommended a state prison sentence (see fn. 2, *ante*) but the prosecutor was willing to accept a probationary term. The trial court agreed to this disposition with great reluctance. In this context, trial counsel could have reasonably concluded that the trial court would not have entertained an objection to the probation condition. This is especially true since by that time case law had upheld Internet access conditioned on a probation officer's approval. (*In re Hudson* (2006) 143 Cal.App.4th 1, 11 [because many probation conditions are subject to securing the approval of the probation officer, probation officers "must exercise a certain amount of discretion and we will not assume that [they] will unreasonably withhold permission for legitimate computer and Internet usage."]; see also *In re Victor L.* (2010) 182 Cal.App.4th 902, 925 ["[T]he courts are not altogether in agreement as to how far they may go in restricting adult access to the Internet, and have tended to reject complete Internet bans . . . unless they contain a clause allowing Internet access with prior approval of the supervising authority."].)

In regard to the first probation violation hearing, defendant concedes a satisfactory explanation for counsel's failure to raise the point: "The probation condition restricting [his] use of the Internet was not at issue in the first probation violation proceeding[], and therefore, there was no reason for counsel to raise the issue at that time."

13

As for the second probation violation hearing, a satisfactory explanation exists for trial counsel's failure to raise the issue:  he could have reasonably concluded that the claim had been forfeited because it had not been raised when the probation condition was first imposed and accepted by defendant.  In other words, it was too late to challenge the constitutionality of the probation condition insofar as it pertained to defendant's actions committed *before* that hearing.  "[D]efense counsel is not required to make futile motions or to indulge in idle acts to appear competent.  [Citations.]" (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091-1092.)  In addition, since defendant's position, as set forth in his testimony at the second probation violation hearing, was that he had been unaware of the condition precluding Internet access absent approval from his probation officer, defense counsel could have reasonably concluded that little, if anything, was to be gained by arguing that the condition was unconstitutional.  (See *Strickland v. Washington, supra,* 466 U.S. at p. 691 ["The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly . . . on information supplied by the defendant."].)

## B.  REVOCATION AND TERMINATION OF PROBATION

Defendant contends that the trial court abused its discretion in revoking and terminating his probation.  We disagree.

The trial court is vested with wide discretion in determining whether probation should be terminated.  An appellate court should interfere with that discretion only in the most extreme case.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)  This is not such a case.

The pre-plea probation report concluded that defendant was not a suitable candidate for probation given the serious facts underlying the charged offenses and

14

therefore recommended a state prison term.  (See fn. 2, *ante*.)  Nonetheless, the parties negotiated a settlement that placed defendant on probation.  The trial court agreed to this disposition with great reluctance, warning defendant that *any* violation of his probation would result in execution of the 10-year sentence.  Within six months, defendant violated his probation by loitering near an area frequented by minors.  Defendant admitted the probation violation.  The trial court told him it was "willing to give [him] one more shot" but that if he again violated probation, he was "going to state prison for ten years."  Three years later, defendant again violated probation, this time by accessing the Internet without first obtaining permission from his probation officer.  In this appeal, defendant concedes this probation violation, but characterizes it as "technical."  Given defendant's unsuccessful performance on probation, the seriousness of the charges, the trial court's willingness to grant defendant another opportunity after his first probation violation, and the probation department's original recommendation, the trial court's decision to revoke and terminate probation was not an abuse of discretion.  (See *People v. Medina* (2001) 89 Cal.App.4th 318, 323 ["[W]hen a judge [initially] suspends execution of a prison term, the message being conveyed is that the defendant is on the verge of a particular prison commitment."].)

Defendant's contrary arguments are not persuasive.

First, defendant relies upon the fact that the probation department's report that notified the court of the Internet violation did not recommend that probation be terminated and the suspended sentence be executed.  Instead, the probation report recommended that the trial court find defendant "in violation of probation; that probation be revoked, reinstated and modified; that defendant be ordered to remove the home computer from his residence and not have any Internet service;" and that defendant "perform 30 days of Cal-Trans [service]."  The trial court was not required to follow this recommendation.  As the trial judge correctly observed:

15

"It's clear to this court, from this [probation] report, that [defendant] hasn't had a continuous probation officer.  Unlike the fact that he's had a continuous judge through the violations."  Defendant's repeated violations of probation constitute sufficient reason for the court to refuse to reinstate his probation.  (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1316.)

Defendant also argues that the trial court abused its discretion because "it made the decision to not reinstate [his] probation before it even heard the evidence concerning [his] violation."  The record does not support this claim.  At the July 26 hearing, the court made clear that, based upon the probation report, it was making only the preliminary finding that defendant had violated probation and that a later hearing would be conducted at which testimonial evidence would be presented, following which it would make its decision.  At the subsequent hearing, the court listened to all the witnesses, made detailed credibility findings, and explained its decision.  No abuse of discretion occurred.

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.          EDMON, J.*

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16