Filed 9/24/15  P. v. Stewart CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B258936 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA058125) |
| v. | |
| NATALIE A. STEWART, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Affirmed.

Tracy L. Emblem, under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Natalie A. Stewart appeals her convictions for being an accessory after the fact to the crime of burglary, and dissuading a witness from prosecuting a crime. Stewart contends the trial court committed instructional error, and should have granted her Penal Code section 1118.1 motion for judgment of acquittal on the dissuading a witness count. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

a. *People's evidence*

Viewed in accordance with the usual rules governing appellate review, the evidence relevant to the issues presented on appeal was as follows.

On the evening of November 15, 2012, appellant Stewart's son, Tevin Crawley, visited a Lancaster Walmart store with two companions, a man and a woman. The trio loaded a shopping cart with merchandise and Crawley attempted to pay for the items with a stolen credit card. When Adam Rollins, an Asset Protection Manager for Walmart, instructed the cashier to ask for identification, the trio left the store with the merchandise and began placing it in a Caprice automobile. After Rollins followed the trio to the parking lot, they fled on foot, leaving the Caprice and the merchandise behind. Additional merchandise, purchased earlier in the day with a stolen credit card, was found inside the car.

Shortly thereafter, Stewart, accompanied by her 16-year-old daughter, India C., walked up to the Caprice. Stewart swore at Rollins, told him the Caprice and its contents were hers, and told him to get away from the car.[1] When Rollins stood behind the Caprice to block its departure from the lot, Stewart angrily stated, among other things, that she would run his " 'bitch ass over' " if he did not move.

Los Angeles County Deputy Sheriffs, including Deputies Joseph Mesa and Jeffrey Williams, arrived on the scene within a few minutes. Stewart told them the Walmart

---

[1]    It was undisputed the car was registered to Stewart but driven by Crawley.

2

personnel were refusing to allow her to take the Caprice. After ascertaining that the Caprice contained stolen items, Deputy Mesa placed Stewart in the back of his patrol car. Stewart reiterated that the car was hers and she was the only one who drove it. When Williams accused her of lying, she responded, " 'go fuck yourself' " and called Williams a "White racist bitch."

Deputy Williams then questioned India, explaining that the driver of the Caprice had just stolen merchandise from Walmart. When India began talking to Williams, Stewart screamed at India, saying " 'Keep your mouth shut. Don't talk to them,' " " 'Don't tell them anything,' " and " 'You better keep your mouth shut.' " Rollins also heard Stewart say to India, through the half-open window of the police car, "[n]ot to say shit. Don't open her mouth. Don't say anything." India began to cry. She put her head down, hunched her shoulders, and said, " 'I don't want to talk to you. I will get in trouble,' " and " 'If I tell you what you are asking, my mom's going to beat my ass.' " India appeared upset and frightened, and was trembling. Because it was cold and beginning to rain, Williams had India sit in his patrol vehicle while he questioned her further. Williams could hear Stewart, who was at that point 20 feet away in another patrol car, yelling, hitting the windows of the patrol car, and still screaming at India. Deputy Michael Reynolds observed the same behavior, and noted Stewart was making "gestures with her hands." India said she wanted to do the right thing, but was afraid. She told Williams, Mesa, and Reynolds that she did not wish to provide further information because she would "be getting in a lot of trouble from her mother" and was afraid of Stewart. India was "fully cooperating" until Stewart began yelling at her. Williams denied treating India rudely or grabbing her arm forcefully. The deputies did not believe India was a suspect in the crime. Although Stewart was arrested and transported from the scene, the deputies did not contact the Department of Children and Family Services.

b. *Defense evidence*

India testified as follows. She and Stewart drove in Stewart's Buick to the Walmart shopping center to shop. They encountered Crawley's friend, Theo, with whom

Crawley had been visiting earlier that day. Theo was walking very rapidly. When Stewart inquired as to Crawley's whereabouts, Theo threw a shirt into the back of Stewart's Buick and walked away. Worried, Stewart parked the car and searched the parking lot for Crawley. Eventually they located the Caprice, which was surrounded by two Walmart loss prevention employees and a security guard. Stewart told them the Caprice was hers. One of the Walmart employees suggested that India was the woman who had been with Crawley inside the store. When he asked India if she had driven the Caprice, Stewart told her, " 'It's okay, India. I will handle this. Let me take care of it because it's adult.' "

When the sheriff's deputies arrived, they questioned Stewart and India regarding who had driven the car. Stewart said the car was hers. They took India's cellular telephone and Stewart's purse. When the deputies were unsatisfied with Stewart's answers, they became angry and placed her in a patrol car. Stewart said to India, " 'don't get it fucked up because you see what they are doing to Mom. You have the right to remain silent.' " India thought Stewart meant she did not have to talk, and did not want to end up in a patrol car like her mother. Several deputies questioned her and were rude to her, stating, among other things, " 'Shut the hell up. Stop talking. If she gives you smart mouth, put her in the back of the cop car with her mom' "; " 'If you don't tell me the truth, you are going to go to jail and I will make sure you and your mom go to jail tonight' "; and " 'Shut the fuck up. You better start talking.' " When she was unable or unwilling to answer questions, one of the deputies said he would kill her brother when he found him, and that Stewart would go to jail and India would never see her again. India asked all three deputies to call her father, but they refused. India was frightened, cried, and ceased talking as a result of the deputies' statements and conduct, not her mother's. She was afraid of the deputies. When India saw Stewart shaking her head, she understood this to mean Stewart wanted the deputies to leave India alone. India did not take anything Stewart said as a threat, was not afraid Stewart would hit her, and did not think she would be in trouble with Stewart if she spoke to the deputies. To the contrary, she loved her mother, who was her best friend. She did not say she wouldn't cooperate

4

because she was afraid of her mother. She told the deputies she did not wish to talk to them because she was scared of them. When India's brother, Reginald Stewart, arrived, the deputies handcuffed and questioned him. One of the deputies told India that her mother was " 'not going home because she has a smart ass mouth.' "

c. *Rebuttal evidence*

India told the deputies that she and Stewart went to Walmart because Crawley called home and stated that he and Theo "got in trouble" there, "security was holding" the Caprice, and he needed help.[2]

2. *Procedure*

Trial was by jury. Stewart was convicted of acting as an accessory after the fact to the crime of burglary (Pen. Code, § 32, count 3)[3] and dissuading a witness from prosecuting a crime (§136.1, subd. (b)(2), count 4).[4] The trial court sentenced Stewart to the low term of 16 months in prison. It imposed a restitution fine, a suspended parole restitution fine, a court operations assessment, and a criminal conviction assessment. Stewart appeals.

## DISCUSSION

1. *Section 136.1*

Section 136.1 "defines a family of 20 related offenses." (*People v. Torres* (2011) 198 Cal.App.4th 1131, 1137.) The statute criminalizes, inter alia, attempting to dissuade a victim or witness from testifying at trial or other proceedings, making a police report, or causing a complaint to be prosecuted or assisting in its prosecution. (*Id.* at p. 1138; see generally *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.) Subdivision (a) of the

---

[2] The defense also presented the testimony of Reginald Stewart, and both the People and the defense presented additional evidence in rebuttal and surrebuttal. Because much of that evidence is not directly relevant to the issues presented on appeal, we do not detail it here.

[3] All further undesignated statutory references are to the Penal Code.

[4] The jury acquitted Stewart of making criminal threats (§ 422).

statute provides: "Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law. [¶] (2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law. [¶] (3) For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice."

Subdivision (b) of section 136.1 provides: "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge. [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof. [¶] (3) Arresting or causing or seeking the arrest of any person in connection with that victimization."

Thus, broadly speaking, section 136.1, subdivision (a) addresses dissuading a witness from testifying, whereas subdivision (b) – the subdivision at issue here -- targets prearrest efforts to prevent a crime from being reported to the authorities, or an action to be prosecuted. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347; *People v. Velazquez* (2011) 201 Cal.App.4th 219, 232-233; *People v. Torres, supra,* 198 Cal.App.4th at p. 1138.) Section 136.1, subdivision (c) designates a violation of either subdivision (a) or (b) as a felony,[5] and provides for a higher range of punishment,

---

[5]     Except where the circumstances in subdivision (c) are proved, violation of subdivision (a) or (b) is a "wobbler," which may be punished as either a felony or a

6

when the defendant dissuades or attempts to dissuade the witness by means of force or threat of violence, acts in furtherance of a conspiracy, acts for pecuniary gain, or has been previously convicted of the same offense. (See generally *People v. Torres, supra,* at p. 1138.)

2. *Purported instructional error*

Stewart contends the trial court prejudicially erred by failing to sua sponte instruct, pursuant to section 136.1, subdivision (a)(3), that evidence she was "a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice."

a. *Additional facts*

The trial court instructed the jury on the elements of section 136.1 with CALJIC No. 7.14. That instruction provided that the People were required to prove: (1) India was a witness; (2) Stewart, "with the specific intent to do so," prevented or dissuaded, or attempted to prevent or dissuade, India from (3) cooperating or providing information so that a complaint could be sought and prosecuted, and from helping to prosecute that action, or making a report to a peace officer; and (4) Stewart acted knowingly and maliciously. "Malice" was defined using the language of section 136 as "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." Stewart did not request, and the trial court did not give, an instruction on the presumption contained in section 136.1, subdivision (a)(3).

b. *Legal principals and standard of review*

A trial court must instruct, sua sponte, on the general principles of law relevant to and governing the case, including instructions on all the elements of a charged offense. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311; *People v. Haraszewski* (2012) 203 Cal.App.4th 924, 936; *People v. Gerber* (2011) 196 Cal.App.4th 368, 390.) Upon

---

misdemeanor. (*People v. Upsher, supra,* 155 Cal.App.4th at p. 1320; *People v. McElroy* (2005) 126 Cal.App.4th 874, 880.)

request, a trial court must also give an instruction that pinpoints the theory of the defense case, if supported by the evidence. (*People v. Wilkins* (2013) 56 Cal.4th 333, 348-349; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142.) A pinpoint instruction " 'relate[s] particular facts to a legal issue in the case or "pinpoint[s]" the crux of a defendant's case, such as mistaken identification or alibi.' " (*People v. Wilkins, supra,* at pp. 348-349.) A pinpoint instruction is not required to be given sua sponte. (*People v. Rogers* (2006) 39 Cal.4th 826, 878.) Errors in jury instructions are questions of law, which we review de novo. (*People v. Jandres* (2014) 226 Cal.App.4th 340, 358.)

　　c. *Discussion*

　　Stewart urges that because India was her family member, the trial court had a sua sponte duty to instruct on the evidentiary presumption contained in section 136.1, subdivision (a)(3), and its failure to do so violated her rights to due process and a fair trial. She avers that the "jury was required to find appellant knowingly and maliciously intimidated a witness," and in making that determination, it should have considered the evidentiary presumption, which, in her view, was akin to an element of the crime. She contends the alleged error is reviewable pursuant to section 1259; alternatively, if defense counsel's failure to request the instruction resulted in forfeiture, counsel provided ineffective assistance.

　　The People counter that Stewart forfeited her claim by failing to object or request the instruction below; the instruction was a pinpoint instruction that the trial court was not required to give sua sponte; no substantial evidence supported the instruction; counsel could have had a tactical reason not to request it; and any error was harmless.

　　Preliminarily, we reject the People's contention that Stewart's argument has been forfeited. "Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.) Despite a defendant's failure to preserve an instructional issue for appeal, we may review a claim of instructional error to the extent her substantial rights were affected. (§ 1259; *People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Because Stewart

8

contends that the omitted instruction violated her substantial rights, we address her argument to determine whether there has been a miscarriage of justice. (*People v. Anderson, supra*, at p. 927; *People v. Salcido* (2008) 44 Cal.4th 93, 155.)

However, Stewart's claim fails on the merits, for a reason not considered by the parties. Unlike subdivisions (a) and (c) of section 136.1, the offenses listed in subdivision (b) do not require proof of malice. In contrast to the express requirement in subdivisions (a) and (c) that the defendant must act "knowingly and maliciously," subdivision (b) contains no such language. Instead, subdivision (b) simply states that "every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . ." "Unlike the subdivision (a) offenses, the subdivision (b) offenses do not expressly include the mental element of knowingly and maliciously." (*People v. Torres, supra,* 198 Cal.App.4th at p. 1138; see also *People v. Upsher, supra,* 155 Cal.App.4th at p. 1320 ["Section 136.1, subdivision (b)(1) does not require that the defendant act knowingly and maliciously"]; *People v. McElroy, supra,* 126 Cal.App.4th at p. 881.) Thus, although the instruction given by the trial court required the People to prove malice – an addition that benefitted Stewart – such a showing was not required. (See generally *People v. Torres, supra,* at p. 1142, fn. 7.)

Given that malice is not an element of a section 136.1, subdivision (b) offense, the presumption contained in section 136.1, subdivision (a)(3) was inapplicable. It would make little sense to instruct the jury that the defendant was presumed to act without malice where malice is not an element of the offense. Accordingly, the trial court had no sua sponte duty to instruct on the presumption, and defense counsel did not provide ineffective assistance by failing to request it. (See, e.g., *People v. Kendrick* (2014) 226 Cal.App.4th 769, 780 [defense counsel is not required to indulge in idle acts to appear competent]; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)[6]

---

[6]     In light of our conclusion, we need not reach the parties' other arguments.

### 3. *Sufficiency of the evidence*

At the close of evidence, defense counsel moved under section 1118.1 for acquittal on all charges, on the ground the evidence was insufficient. The trial court denied the motion. Stewart challenges the court's ruling in regard to the charge of dissuading a witness in violation of section 136.1, subdivision (b)(2).

When determining whether the evidence was sufficient to sustain a criminal conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104; *People v. Houston* (2012) 54 Cal.4th 1186, 1215.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. McCurdy, supra,* at p. 1104; *People v. Medina* (2009) 46 Cal.4th 913, 919.) Reversal is not warranted unless it appears " ' "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies this same standard, based on the state of the evidence at the time the motion was made. (*People v. Whalen* (2013) 56 Cal.4th 1, 55; *People v. Houston, supra,* 54 Cal.4th at p. 1215; *People v. Stevens* (2007) 41 Cal.4th 182, 200.) We independently review a trial court's ruling under section 1118.1. (*Whalen*, at p. 55; *Stevens,* at p. 200.)

"To prove the crime of dissuading a witness from prosecuting a crime in violation of section 136.1, subdivision (b)(2), the prosecution must establish that the defendant, with the specific intent to do so, dissuaded or attempted to dissuade a witness or victim from '[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.' [Citations.]" (*People v. Velazquez, supra,* 201 Cal.App.4th at pp. 229-230; cf. *People v. Navarro, supra,* 212 Cal.App.4th at p. 1347.) The defendant's acts or statements must have been intended to affect or influence a potential witness's or victim's acts. (*People v. McDaniel* (1994)

10

22 Cal.App.4th 278, 284.) As discussed *ante,* applying the plain language of section 136.1, subdivision (b), malice is not required. (*People v. Torres, supra,* 198 Cal.App.4th at p. 1138; *People v. Upsher, supra,* 155 Cal.App.4th at p. 1320 ; *People v. McElroy, supra,* 126 Cal.App.4th at p. 881.)

The evidence was sufficient to establish these elements here. Stewart attempted to access the car containing the stolen merchandise before police arrived, in what the jury could infer was an effort to aid her son's getaway and theft of the merchandise. Stewart's statements to India, as recounted by the deputies and Rollins, demonstrated she was attempting to dissuade India from providing any information to the deputies about the Caprice or her brother's whereabouts. With an angry demeanor Stewart told India, " 'You better keep your mouth shut,' " " 'Don't talk to them,' " and " 'Don't tell them anything.' " In response, India became frightened and stated she could not answer the deputies' questions or Stewart would " 'beat [her] ass.' " India's refusal to provide information could have hindered the deputies' investigation of the crime, which in turn could have resulted in the People's inability to prosecute the case. That Stewart had the specific intent to dissuade India in order to allow herself and/or her son to escape prosecution could readily be inferred from the circumstances.

Stewart's arguments to the contrary are not persuasive. She avers that the conviction rests on "speculation by police that India was intimidated" by her statements. To the extent Stewart intends to argue the evidence was insufficient because India was not *actually* intimidated, this argument fails. Section 136.1, subdivision (d) provides: "Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt." Thus, actual intimidation is not an element. She also contends that her orders to India not to talk to the deputies did not provide substantial evidence of malice. But, even assuming arguendo Stewart is correct – a conclusion with which we do not necessarily agree -- as we have explained, malice was not an element of a section 136.1, subdivision (b) offense.

11

In a cursory argument first raised in her reply brief, Stewart also avers that she had a "fundamental First Amendment right as a parent to tell her daughter to not talk with the police," and her "[m]ere words" and actions of banging on the police car window did not establish a "gravity of purpose or malicious intent and equate to criminal liability." Stewart did not object on First Amendment grounds below. While courts generally consider constitutional challenges to penal statutes for the first time on appeal where the arguments are based on undisputed evidence (*People v. Navarro, supra,* 212 Cal.App.4th at p. 1348, fn. 9), here Stewart also failed to adequately raise this contention in her opening brief, which included nothing more than a bare citation to the First Amendment and article I, section 2 of the California Constitution. Her reply brief offers only cursory argument and fails to cite pertinent authority on the point. Under these circumstances, her argument has been waived. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408; *People v. Tully* (2012) 54 Cal.4th 952, 1075; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1543, fn. 3.)

In any event, *People v. Navarro* considered and rejected the contention that section 136.1, subdivision (b)(1), inhibited a defendant's free speech rights or was unconstitutionally vague or overbroad. (*People v. Navarro, supra,* 212 Cal.App.4th at pp. 1347-1353.) *Navarro* explained that "Ordinary citizens discussing the criminal justice system and the pros and cons of becoming involved in a police investigation would not run afoul of the law." (*Navarro, supra,* 212 Cal.App.4th at p. 1352.) Here, there was evidence from which the jury could infer Stewart did not simply discuss the pros and cons of becoming involved; instead, she ordered her daughter, in a threatening manner, not to provide information that might incriminate Stewart and/or Crawley. As for Stewart's argument that criminal defense attorneys routinely advise their clients not to speak to police, presumably such advice is given to enable criminal defendants to exercise their Fifth Amendment privilege against self-incrimination, a circumstance not present here.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

ALDRICH, J.

We concur:

KITCHING, Acting P. J.

JONES, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13