Filed 6/30/25 P. v. Emert CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ROBERT ANTHONY EMERT, <br><br>     Defendant and Appellant. | D083587 <br><br><br> (Super. Ct. No. SCD297230) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant Robert Anthony Emert pleaded guilty to one count of child abduction (Pen. Code, § 278.5, subd. (a); undesignated statutory references

are to this code) and was placed on three years' probation subject to certain conditions. On appeal, defendant challenges the reasonableness of conditions that authorize a probation officer to impose certain curfew and alcohol-related restrictions. Because defendant did not raise this challenge in the trial court, we conclude he forfeited the issue for appeal. Defendant argues that if we find forfeiture, then his trial counsel provided ineffective assistance by failing to object to the challenged conditions. On the limited record before us on direct appeal from a judgment resulting from a guilty plea, we find defendant's contentions unpersuasive.

Accordingly, we affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Defendant and his ex-wife, Andrea S. (Mother), have two children together, B.E. (Son) and S.E. In 2021, defendant and Mother were involved in divorce proceedings in which the family court entered custody orders. On October 4, 2021, defendant abducted Son and refused to return him to Mother's custody despite the family court repeatedly ordering him to do so.

District attorney investigators spoke with defendant by telephone several times to negotiate — unsuccessfully — Son's return to Mother. The FBI's National Threat Operation Center later notified one of the district attorney investigators that defendant had contacted the FBI about his case and made veiled threats to district attorney personnel about defendant's knowledge of his "Second Amendment rights." The investigator obtained an arrest warrant for defendant.

On January 3, 2023, defendant was arrested, and Son was subsequently reunited with Mother. By then, defendant had kept Son from Mother for about 15 months.

### B. Procedural History

The day after his arrest, defendant was charged with one count of child abduction. (§ 278.5, subd. (a).) Three months later, on April 4, 2023, defendant entered into a plea agreement. In exchange for pleading guilty, defendant would be placed on probation, be released from custody on GPS monitoring pending sentencing, be credited with time served, and the criminal court would defer protective order issues to the family court's determinations regarding visitation and custody.

In August 2023, defendant moved to withdraw his guilty plea. After an evidentiary hearing three months later, the trial court denied the motion.

In December 2023, the trial court sentenced defendant in accordance with the terms of the parties' plea agreement, which included placing him on three years' probation subject to numerous conditions. Four of those conditions are relevant here.

The first relevant condition — Condition 6.e — relates to a curfew and provides: "Comply with a curfew if so directed by the P.O."

The remaining three conditions — Conditions 8.b, 8.c, and 8.f — relate to alcohol. Condition 8.b provides: "Do not knowingly use or possess alcohol if directed by the P.O." Condition 8.c provides: "Attend 'Self-help' meetings as/if directed by the P.O.," with checkboxes in front of the words "as" and "if." The court checked the "if" box. Condition 8.f provides: "Submit to any chemical test of blood, breath, or urine to determine blood alcohol content and authorize release of results to P.O. or the court whenever requested by the P.O., a law enforcement officer, or the court ordered treatment program."

# III. DISCUSSION

Defendant contends on appeal that the curfew and alcohol-related probation conditions are unreasonable based on the particular facts of his case. As we will explain, we conclude defendant forfeited this challenge by failing to raise it in the trial court. We also conclude defendant has not met his burden to show that his trial counsel rendered ineffective assistance by failing to prevent this forfeiture and objecting to the challenged conditions.

## A. Background

As described, in April 2023, defendant entered into a plea agreement under which he would be granted probation.

In May 2023, the probation officer prepared her written report. Based on her interview of defendant, the probation officer observed him to be "paranoid, obsessive, and narcissistic." Defendant reported drinking alcohol three times per week, and occasionally consuming marijuana "gummies" (most recently in 2019). Finding only one mitigating circumstance and four aggravating circumstances, the probation officer reasoned that, although the upper term of the 16-month/two-year/three-year sentencing triad "could be justified," the two-year middle term was appropriate. The probation officer recommended that any grant of probation include "[a]ll standard conditions," including the curfew and alcohol-related conditions defendant challenges here. The report states, "The conditions of probation were explained, and the defendant repeatedly stated he was a 'law-abiding citizen' and would not have any problems following the court's orders."

In August 2023, defendant moved to withdraw his guilty plea. Three months later, in November 2023, the trial court held an evidentiary hearing on the motion. Defendant was represented at this hearing by attorney

4

T. Matthew Phillips, whom defendant had retained about one month earlier.[1] Although Phillips stated he was "not as prepared as [he] would have liked to have been," the trial court found he "ha[d] done an excellent job, . . . had plenty of time to prepare, . . . was direct with the court," and "presented witnesses."[2] The trial court denied defendant's motion and set sentencing for the following month.

At the outset of the sentencing hearing, defendant moved to relieve Phillips as his retained counsel and to have the court appoint new counsel. Defendant argued that although Phillips "is a very talented lawyer, . . . he doesn't know the case" and "is not prepared to move forward." The court

---

[1] Defendant changed counsel several times in 2023. At his January arraignment, defendant was represented by the public defender's office. From January to June, he was represented by retained counsel Jose Badillo. From June to September, defendant was represented by the public defender's office. From September to October, defendant represented himself. And from October to December, defendant was represented by Phillips. Defendant requested at the November hearing on his motion to withdraw his guilty plea that he be allowed to represent himself again, but the trial court denied the request as untimely and "done solely for the purpose of delaying [the] proceedings." The court also found "it would be inappropriate" because defendant was "unable to control himself" — he did "not comply with court directives" and frequently "interrupt[ed] the court."

[2] Phillips presented three witnesses — the attorney who represented defendant at the change of plea hearing (Badillo), defendant, and one of defendant's friends.

heard defendant's motion in a closed session with defendant and Phillips.[3] Phillips assured the court that although he "probably would be more deficient than" defendant if "there were facts to argue," Phillips "could adequately represent [defendant] on a sentencing matter" and would "be prepared to proceed with sentencing today" so long as he could review the probation officer's report with defendant. The trial court provided the report to Phillips and directed him to review "the terms and conditions" with defendant. Phillips agreed 30 minutes should be sufficient for this review. The court stated, "If you need more time, you can ask for more time, but it is simply a matter of going over the report that has been generated and in existence since May of this year." After defendant repeatedly interrupted the court and evaded the court's questioning, the court "terminated" the closed hearing and denied defendant's motion to substitute counsel.

After a recess, the trial court explained in open court that it denied defendant's motion as "untimely and a continuing effort to delay the process of the . . . case going to sentencing." The court observed that Phillips "has done an excellent job representing his client" and "there is absolutely no basis to relieve [him]" for a simple sentencing matter. The court confirmed with Phillips that he "had time to go through each" probation condition with defendant. When the court asked Phillips if he would like to address the court regarding any of the probation conditions, Phillips responded, "No. I

---

[3] The trial court referred to the hearing as a "*Marsden* hearing." (See *People v. Marsden* (1970) 2 Cal.3d 118.) The court acknowledged, however, that "while [*Marsden*] may not have been necessarily applicable" because *Marsden* governs requests to replace *appointed* counsel and not *retained* counsel (see *In re V.V.* (2010) 188 Cal.App.4th 392, 398), "the inquiry" was "certainly . . . appropriate" because the trial court "may deny a defendant's motion to discharge his retained counsel if the motion is untimely and would result in disruption of the orderly processes of justice."

think it is all very straightforward, and we understand the terms and conditions." Before pronouncing sentence, the court "wanted to, again, be sure [Phillips] . . . had ample opportunity to go through the terms and conditions" and to confirm "that [defendant] is willing to comply with" them. Phillips responded, "Yes, your Honor."

## B. Relevant Legal Principles

Probation is not a right, but an act of leniency allowing a defendant to avoid imprisonment. (*People v. Moran* (2016) 1 Cal.5th 398, 402 (*Moran*).) When granting probation, "courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; see § 1203.1, subd. (j).) A probation condition will be deemed reasonable *unless* it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486, italics added.) "This test is conjunctive — all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) We review the reasonableness of probation conditions for abuse of discretion. (*Moran*, at p. 403.)

"As a rule, failure to object to a probation condition in the trial court on standard state law or reasonableness grounds forfeits the claim for appeal." (*Moran*, *supra*, 1 Cal.5th at p. 404, fn. 7, citing *People v. Welch* (1993) 5 Cal.4th 228, 237 (*Welch*).) "A timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case." (*Welch*, at p. 235.)

7

### C. Analysis

#### 1. Defendant Forfeited His Appellate Challenge to the Probation Conditions by Failing to Object in the Trial Court

Defendant had ample opportunity to review his probation conditions and to challenge any he found objectionable. He reviewed the conditions with his probation officer about seven months before sentencing and "repeatedly stated he . . . would not have any problems following the court's orders." Defendant reviewed the conditions again on the day of sentencing with attorney Phillips, who confirmed to the trial court that defendant understood and was "willing to comply with those terms and conditions." Despite this, defendant never objected to the curfew or alcohol-related conditions. Accordingly, he has forfeited the challenge for appeal. (See *Moran*, *supra*, 1 Cal.5th at p. 404, fn. 7; *Welch*, *supra*, 5 Cal.4th at p. 237.)

Defendant asserts two arguments against forfeiture. First, he relies on *People v. Dominguez* (1967) 256 Cal.App.2d 623 to support the proposition that, because reasonable probation conditions are a matter of public concern, the right to challenge unreasonable conditions cannot be waived by an individual's acceptance of the conditions without objection. (See *id*. at p. 629 [" ' "Although a defendant may waive rights which exist for his own benefit, he may not waive those which belong also to the public generally." ' "].) Defendant's "reliance on . . . *Dominguez* is misplaced," however, because the case "preceded the California Supreme Court's decision[] in *Welch*," which unambiguously "adopt[ed] a prospective waiver rule" for probation conditions. (*People v. Connors* (2016) 3 Cal.App.5th 729, 737 [rejecting the same challenge defendant raises here].)

Second, defendant argues a court's imposition of an unreasonable probation condition exceeds the court's jurisdiction to impose only reasonable conditions and may be challenged on appeal as an unauthorized sentence notwithstanding the failure to object at trial. (See *People v. Smith* (2001) 24 Cal.4th 849, 852 ["We have . . . created a narrow exception to the waiver rule for ' "unauthorized sentences" or sentences entered in "excess of jurisdiction." ' "].) For purposes of this exception, "a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case[,] . . . independent of any factual issues presented by the record at sentencing." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Defendant does not argue that the curfew and alcohol-related probation conditions could never be lawfully imposed in any case regardless of the facts; rather, he claims only that the conditions are unreasonable as applied to him under the particular facts of this case. Consequently, defendant's challenge does not fall within the narrow unauthorized-sentence exception to the forfeiture rule.

## 2. Defendant Has Not Shown His Trial Counsel Rendered Ineffective Assistance by Failing to Object to the Probation Conditions in the Trial Court

Defendant argues, in the alternative, that if we find (as we have) that he forfeited his challenge to the probation conditions, then the forfeiture resulted from constitutionally inadequate legal assistance at trial. We are not persuaded.

" 'An ineffective assistance claim has two components: A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' " (*In re Gay* (2020) 8 Cal.5th 1059, 1073; see *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) Counsel's

9

performance was deficient if "it fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  The defense was prejudiced if there is "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Ibid*.)  "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid*.)  "It is [the] defendant's burden to demonstrate the inadequacy of trial counsel." (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)

On the record before us, we are not persuaded by defendant's assertion that "there was no conceivable tactical reason for" his trial counsel (Phillips) to refrain from objecting to the probation conditions defendant now challenges.  To the contrary, courts have rejected similar claims when "trial counsel had already negotiated an extremely favorable disposition" and "trial counsel could have reasonably concluded that the trial court would not have entertained an objection to [a] probation condition." (*People v. Kendrick* (2014) 226 Cal.App.4th 769, 779.)  This rationale applies here.  Defendant faced a maximum of three years in prison and the probation officer identified sufficient aggravating circumstances to warrant that sentence (or, at a

10

minimum, the two-year middle term).  Phillips could reasonably have concluded it was not worth jeopardizing defendant's favorable plea agreement by objecting to probation conditions the court and the probation officer deemed "standard."

Phillips also may have made the tactical decision to refrain from objecting to probation conditions the probation officer may never have chosen to enforce.  Defendant was required to comply with the curfew condition and two of the alcohol-related conditions (possession and treatment) only "if directed by the P.O.," and with the remaining alcohol-related condition (submitting to testing) only "whenever requested" by the probation officer or other authorities.  Nothing in the record indicates that defendant's probation officer has imposed these conditions, or — especially considering defendant's self-reported limited alcohol consumption — that she ever will impose them.  Accordingly, Phillips may have opted for a wait-and-see approach of challenging the conditions only if they were ever unreasonably imposed.  (See *People v. Cookson* (1991) 54 Cal.3d 1091, 1095 ["A court may . . . modify a term of probation at any time before the expiration of that term."], citing §§ 1203.3, 1203.2, subd. (b); *People v. Keele* (1986) 178 Cal.App.3d 701, 708 [trial courts retain jurisdiction to review the reasonableness of the probation officer's actions]; *People v. Ybarra* (1988) 206 Cal.App.3d 546, 550 ["matters which are not ripe for adjudication should ordinarily be left to a future forum"].)

Finally, Phillips may have made the tactical decision to refrain from objecting because he viewed the objection as meritless.  (See *People v. Mitcham* (1992) 1 Cal.4th 1027, 1080 ["Counsel's failure to make a meritless objection does not constitute deficient performance."]; *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing

11

to make motions or objections that counsel reasonably determines would be futile."].)  The trial court repeatedly observed defendant to be disruptive and disdainful of court orders regarding custody of Son.  Phillips may have considered the alcohol-related conditions a reasonable means of guarding against defendant's impulsive violation of the family court's custody orders, compliance with which was incorporated as a probation condition.  (See *People v. Smith* (1983) 145 Cal.App.3d 1032, 1034 ["The use of alcohol produces . . . a lessening of internalized self-control . . . .  Drinking at any time, even for the social, controlled drinker who can stop at will, can lead to a temporary relaxation of judgment, discretion, and control."].)

Defendant maintains that Phillips rendered ineffective assistance because he "admitted he did not know the facts well, [whereas] knowledge of the facts was of critical importance in knowing whether or not imposed probation conditions are unreasonable."  The record does not support this claim.  Although Phillips acknowledged defendant was likely more knowledgeable about the facts of the case than Phillips, Phillips assured the court he could competently handle sentencing if he was provided with the probation officer's report and the opportunity to review the proposed probation conditions with defendant.  The trial court accommodated this request and repeatedly confirmed Phillips had had sufficient time to discuss the conditions with defendant.  If additional facts were necessary to evaluate the reasonableness of the conditions, defendant could have supplied them to Phillips during his consultation.  (See *Strickland, supra,* 466 U.S. at p. 691 ["The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly . . . on information supplied by the defendant."].)  More generally, Phillips represented defendant for about two

months before the sentencing hearing, including at the hearing on defendant's motion to withdraw his guilty plea.  This hearing (involving three witnesses and consuming about 100 pages of the reporter's transcript) was more extensive than the preliminary hearing (involving one witness and consuming only about 23 pages of the reporter's transcript).  Considering the early stage at which this case resolved by way of plea agreement, it appears Phillips was suitably prepared.

## IV.  DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:


DO, Acting P. J.


KELETY, J.