Filed 5/20/21

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>DONALD ALEXANDER WATSON,<br><br>  Defendant and Appellant. | A159284<br><br>(Solano County<br>Super. Ct. No. FC23784) |

In 1988, defendant Donald Watson was convicted by plea of second degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (b))[1] and sentenced to 15 years to life in prison.[2]  In 2019, Watson moved to vacate his murder conviction and obtain resentencing under section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017–2018 Reg. Sess.) and took effect January 1, 2019.  (Stats. 2018, ch. 1015, § 4.)  The intent of the legislation was to limit application of the felony-murder rule and murder based on the

---

 \* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III–V of the discussion.

 [1] All further undesignated statutory references are to the Penal Code.

 [2] We grant Watson's request for us to take judicial notice of (1) the information filed on December 31, 1987; (2) the reporter's transcript documenting his guilty plea from June 13, 1988; (3) the abstract of judgment filed July 1, 1988; and (4) his "Offender Restitution Payment History" from the Department of Corrections and Rehabilitation.  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

natural and probable consequences doctrine by modifying the mens rea element for murder under those theories. (Stats. 2018, ch. 1015, § 1, subds. (f), (g).) The legislation also created a procedure by which a defendant previously convicted of murder under either of those theories can file a petition for resentencing. (§ 1170.95, subd. (d)(1)–(3).)

As pertinent here, the statute provides that where murder was charged generically and the underlying felony was not charged, the trial court redesignates the vacated murder conviction as the "underlying felony for resentencing purposes." (§ 1170.95, subd. (e).) Additionally, it states, "A person who is resentenced pursuant to this section shall be given credit for time served. The judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence." (§ 1170.95, subd. (g).)

The trial court found Watson was entitled to relief under section 1170.95, vacated his murder conviction, and redesignated that conviction as two offenses: first degree burglary and first degree robbery. The court sentenced Watson on the burglary conviction to six years in prison. It also imposed but stayed execution of a sentence on the robbery conviction pursuant to section 654. The court placed Watson on parole supervision and ordered that he pay a $1,800 restitution fine (§ 1202.4, subd. (b)) and a matching parole revocation restitution fine (§ 1202.45).

Watson appeals. He argues the plain language of section 1170.95 permits a court to designate only one underlying felony and, therefore, his sentence for both burglary and robbery is unauthorized. Watson also seeks immediate release from parole supervision, contending the court erroneously failed to apply his excess custody credits to eliminate the parole period.

2

Watson further challenges, primarily on constitutional grounds, the imposition of the restitution and parole revocation restitution fines.

In the published portion of the opinion, we conclude the trial court properly redesignated the murder conviction as both burglary and robbery. In the unpublished portion of the opinion (discussion parts III–V, *post*), we remand to permit the court to specify the duration of Watson's parole period, to modify the judgment to show the restitution fine is satisfied in full, and to strike the parole revocation fine. We reject Watson's remaining challenges.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Murder Conviction and Initial Sentence

In 1987, Watson was charged with the murder of Alan (Jon) Aaron Castle (§ 187, subd. (a)). In 1988, Watson pleaded guilty to second degree murder (§§ 187, subd. (a), 189, subd. (b)). The court accepted the plea and sentenced Watson to 15 years to life in prison. The court ordered that Watson pay a restitution fine in the amount of $300.

### II. Section 1170.95 Petition

On January 14, 2019, after the enactment of Senate Bill No. 1437, Watson filed a petition to vacate his murder conviction and obtain resentencing pursuant to section 1170.95. In the petition, Watson stated that he, along with his "crime partners," Timothy Garland and Robert James, "devised a plan to rob Mr. Jon Castle. [Watson] grabbed Mr. Castle while [Garland and James] rifled through his pockets. Mr. Castle began to kick his feet and struck Timothy Garland. Garland pulled a knife and began to stab Mr. Castle. [Watson] released Mr. Castle immediately. [Watson] had no intention of Mr. Castle being murdered."

Based on these facts, Watson contended he was entitled to relief under section 1170.95, asserting he "was not the actual perpetrator and acted as

3

a [*sic*] Aider and Abettor to the robbery"; "accepted a plea agreement WITHOUT any special circumstances or allegations"; "possessed NO specific intent to murder Mr. Castle"; and had "NO intent to plan, devise or encourage to take the life of Mr. Castle."

On May 13, 2019, the People filed an opposition to the petition on the grounds that Senate Bill No. 1437 is unconstitutional. The People did not address Watson's eligibility for relief under section 1170.95.

On July 15, 2019, Watson filed a reply to the People's opposition, addressing the People's constitutional arguments and reiterating that his petition stated a prima facie case for relief under section 1170.95.

On October 15, 2019, the court conducted a hearing on Watson's petition. Watson testified about the night of the incident in detail as follows. Watson met with James, who rented a hotel room that he would share with Watson. Watson met Castle in the hotel parking lot. Castle stated to Watson he wanted to buy drugs. Based on this, Watson assumed Castle had some money. However, Castle later changed his mind and told Watson he no longer wanted to buy drugs.

Subsequently, James devised a plan to rob Castle and Watson agreed to the plan. Specifically, they agreed to go to Castle's hotel room and take his money. Watson and James left their hotel room and headed to Castle's room. While on the way, Watson saw Garland, with whom James discussed the plan to rob Castle.

When Watson reached Castle's hotel room, he knocked on the door and Castle let him in. Watson walked into the room, grabbed Castle from behind, and held him in order "[t]o subdue him . . . ." Garland and James then entered the room, at which point Castle started kicking and attempting to

4

fight back. Garland began punching Castle. Watson then saw some blood shoot out, realized something was wrong, and let Castle go.

Watson testified Garland then started "swinging his arm at [Castle] crazy." Watson realized Garland had a knife. Watson saw that Castle was still alive and tried to prop him up, but he just collapsed. Garland then rushed back toward Castle and stabbed him in the throat and chest. Watson, Garland, and James then left the room. James had Castle's wallet after the incident.

The next morning, Watson went to a bail bonds company and told its staff he had "witnessed a murder" and "somebody get stabbed," as well as the person "who did it." Watson also called the hotel and "told them that someone was in the room."

In addition to taking Watson's testimony, the court admitted into evidence a transcript of a June 26, 2013 parole consideration hearing that contained similar testimony from Watson and was attached to his petition.

After hearing Watson's testimony, the court heard the parties' arguments whether Watson was entitled to relief under section 1170.95. The court took the matter under submission and continued the hearing.

## III. Resentencing

On October 23, 2019, the court conducted another hearing on Watson's petition. The court found that while Watson "was a major participant in the crime," "he was not acting with knowing and reckless indifference to human life." Accordingly, the court granted the petition.

The court then determined Watson's new sentence. It stated, "My belief was that subject to these crimes—and I'm supposed to figure out what he would've been convicted for is robbery." In response, the prosecutor stated, "I can make an argument to maybe a first-degree burg[lary]." The

court then stated, "That's a fair point. I hadn't thought of that. She's probably right on that, first-degree burg[lary]. And the robbery would be in the first-degree, as well. . . ." Watson's counsel waived arraignment on the burglary charge and confirmed that there was not "[a]ny legal cause why he can't be sentenced at this time[.]"

The court found Watson guilty of both first degree burglary (§§ 459, 460, subd. (a)) and first degree robbery (§§ 211, 212.5, subd. (a)). It sentenced him to the upper term of six years for first degree burglary (§ 461, subd. (a)). The court also sentenced Watson on the robbery conviction to five years in prison, which the court believed was the upper term for first degree robbery (§ 213, subd. (a)(1)).[3] The court stayed the sentence on the robbery conviction pursuant to section 654.

With respect to parole, the court stated, "Sir, I believe you're still subject to a term of parole for this violation. You may be released today or tomorrow. If you are, I'm ordering you go to parole within 48 hours if they don't contact you ahead of time."

The court ordered that Watson pay a restitution fine (§ 1202.4) and a parole revocation restitution fine (§ 1202.45) and reserved jurisdiction over the amounts of the fines. It also imposed a $30 criminal conviction

---

[3] The People correctly note that in 1987 the upper term on a first degree robbery conviction was six years. (Former § 213, subd. (a)(1); see Stats. 1986, ch. 1428, § 3.) The clerk's minute order from the sentencing hearing and the original and amended abstracts of judgment reflect the imposition of a six-year upper term on the first degree robbery conviction. To the extent the reporter's and clerk's transcripts are in conflict, we find that the recitals in the clerk's minutes should prevail. (*People v. Smith* (1983) 33 Cal.3d 596, 599; *In re D.H.* (2016) 4 Cal.App.5th 722, 725.) It is clear the court intended to impose the upper term on the first degree robbery conviction, and we may infer that the court misspoke in calculating the term as five, rather than six, years.

6

assessment and a $40 court operations assessment. The court awarded Watson credit for time served in custody, reserving jurisdiction over the number of credits.

The court ordered Watson's release from custody that day. It then set a further hearing for a determination of the total of Watson's custody credits.

On October 23, 2019, the clerk filed an abstract of judgment reflecting that Watson was convicted of second degree burglary and second degree robbery. The clerk wrote "TBD" for the number of credits for time served.

On October 29, 2019, Watson filed a petition with the court, notifying it that he had not yet been released from custody. He requested that the court vacate the upcoming hearing and amend the abstract of judgment to state he had served 11,714 actual days (32 years) in custody as of October 23, 2019. A couple of days later, the court conducted a hearing on Watson's October 29 petition and awarded him a total of 11,714 custody credits. The court again ordered the sheriff to release Watson from custody.

The prosecutor then requested a ruling on the constitutional arguments raised in opposition to Watson's section 1170.95 petition. The court rejected the arguments, finding the statute to be constitutional.

On that same day, the court filed a minute order and an amended abstract of judgment. The minute order noted that Watson was resentenced under section 1170.95, that his murder conviction (§ 187) was vacated, and that he was ordered released. The amended abstract of judgment noted Watson was (1) convicted of first degree burglary and first degree robbery; (2) sentenced to six years in prison for first degree burglary; (3) sentenced on the first degree robbery conviction to six years in prison, which was stayed; (4) ordered to pay a $1,800 restitution fine (§ 1202.4, subd. (b)), as well as a

$1,800 parole revocation restitution fine (§ 1202.45); and (5) awarded a total of 11,714 days of custody credit as of October 23, 2019.

The People appealed from the court's order granting Watson's section 1170.95 petition. (*People v. Watson*, A158923, app. dism. Mar. 4, 2020.) Watson then filed this cross-appeal. Subsequently, we dismissed the People's appeal after they filed a notice of abandonment.[4]

## DISCUSSION

### I.     Statutory Framework

Senate Bill No. 1437 amended the felony-murder rule and murder under the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 also expressly stated, "Reform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e).) To effectuate these goals, Senate Bill No. 1437 amended sections 188 and 189, the statutory provisions pertaining to malice and the degrees of murder, respectively. (Stats. 2018, ch. 1015, §§ 2–3.) "Section 1170.95 has been described as providing 'ameliorative benefits' [citation] and as 'an act of lenity.' [Citation.] The statute does not 'categorically provide a lesser

---

[4] Watson also requests that we take judicial notice of the file in the People's dismissed appeal. We deny the request as unnecessary since the record in the dismissed appeal contains essentially the same documents that are included in the record in this appeal.

8

punishment must apply in all cases.' [Citation.]" (*People v. Howard* (2020) 50 Cal.App.5th 727, 735 (*Howard*).)

Senate Bill No. 1437 also added section 1170.95, which allows a defendant convicted of felony murder to file a petition with the sentencing court to have the murder conviction vacated and to be resentenced. (§ 1170.95, subd. (a).) A petitioner is entitled to relief under section 1170.95 if three conditions are met: (1) the prosecution proceeded under a felony-murder theory; (2) the petitioner was convicted of first or second degree murder following a trial or an accepted plea; and (3) the petitioner could not be convicted of first degree murder because of changes to section 188 or 189 made by Senate Bill No. 1437. (§ 1170.95, subd. (a)(1)–(3).)

The trial court reviews the petition to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1170.95, subd. (c).) If the petitioner makes such a showing, the court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

"If [the] petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1170.95, subd. (e).)

Finally, "[a] person who is resentenced pursuant to this section shall be given credit for time served. The judge may order the petitioner to be subject

to parole supervision for up to three years following the completion of the sentence." (§ 1170.95, subd. (g).)

## II. Designation of Murder Conviction as More Than One Felony

The parties agree that Watson was entitled to have the murder conviction vacated pursuant to section 1170.95. They also agree that Watson was convicted of murder under a felony-murder theory. They further agree that burglary and robbery are offenses that underly Watson's felony-murder liability. The parties, however, disagree on whether the court was authorized under section 1170.95, subdivision (e) to designate the conviction as both of those felonies. Watson raises a textual argument—that the plain language of section 1170.95, subdivision (e) requires a court "to select one felony as the designated underlying offense, and sentence him only as to that one." Consequently, Watson says "[t]he court exceeded its authority by imposing two felony convictions that had not been charged against him" and thus the robbery conviction should be stricken.

The People argue that Watson forfeited his right to assert these challenges on appeal by failing to assert them before the trial court. However, they contend that, in any event, designating more than one underlying felony was proper under section 1170.95, subdivision (e) because doing so furthers the purpose of the statute to ensure that punishment is calibrated to culpability.

We first address the People's forfeiture argument. Assuming Watson forfeited his right to appellate review of the court's designation of two underlying felonies, reviewing courts generally have discretion to consider on the merits issues a party has not preserved for review. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310, citing *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881, 887–888.) Here, we choose to exercise that discretion to confront

10

the issue since "it involves 'a pure question of law which is presented by undisputed facts' " (*People v. Hines* (1997) 15 Cal.4th 997, 1061), and to avert any claim of inadequate assistance of counsel (*People v. Yarbrough, supra*, 169 Cal.App.4th at p. 310).

We now turn to the question before us:  whether, as Watson contends, section 1170.95 requires a trial court to designate a vacated murder conviction as one and only one underlying felony.  In the discussion that follows, we explore the language of section 1170.95, subdivision (e); its statutory context; and the legislative purposes and history of Senate Bill No. 1437.  We conclude that section 1170.95 was not intended to restrict the trial court's discretion in the manner advanced by Watson when designating the underlying felony for resentencing purposes.

### A.	*Standard of Review and Statutory Interpretation Principles*

The proper construction of section 1170.95, subdivision (e) presents an issue of statutory interpretation that is subject to our de novo review.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  "[W]hen construing statutes, our goal is ' " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " ' [Citation.]  'We first examine the words of the statute, "giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent." ' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 54–55.)  "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of*

*Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

**B. *The court properly designated the conviction as both burglary and robbery under section 1170.95, subdivision (e).***

1. *Language of the Statute*

In applying the rules of construction set forth *ante*, we begin by looking at the words of the statute. The pertinent provision is section 1170.95, subdivision (e), which states: "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose."

At issue here is the proper interpretation of the phrase "underlying felony" in section 1170.95, subdivision (e).[5] The provision does not define "underlying felony" or specify the process by which the court designates the felony. As explained in *Howard, supra*, 50 Cal.App.5th 727, "[i]n the felony-

---

[5] The other phrase that appears in section 1170.95, subdivision (e), "target offense," is typically used in the context of murder liability under the natural and probable consequences doctrine, which "operates independently of the . . . felony-murder rule." (*People v. Culuko* (2000) 78 Cal.App.4th 307, 322; see *People v. Chiu* (2014) 59 Cal.4th 155, 166 ["An aider and abettor's liability for murder under the natural and probable consequences doctrine operates independently of the felony-murder rule"], superseded by statute on other grounds as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, review granted Nov. 13, 2019, S258175; see also *People v. Culuko, supra*, 78 Cal.App.4th at p. 322 [the doctrine "allows an aider and abettor to be convicted of murder, without malice, even where the target offense is not an inherently dangerous felony"].) As the parties do not dispute that Watson was convicted of murder under a felony-murder theory, we focus on the phrase "underlying felony."

murder context, the phrase 'underlying felony' means the offense that was the basis for felony-murder liability at trial." (*Id.* at p. 737, citing *People v. Clark* (2016) 63 Cal.4th 522, 615 ["The statutory definition of first degree felony murder is . . . ' . . . murder . . . committed in the perpetration of, or attempt to perpetuate [certain enumerated felonies including robbery and burglary]' "].)  The parties apparently do not dispute this definition of what constitutes an underlying felony within the felony-murder context.  The parties, however, debate whether "underlying felony" as used in subdivision (e) is singular or plural.

Watson contends that "underlying felony," on its face, is singular and, therefore, means one felony.  At first glance, it appears the language of Penal Code section 1170.95, subdivision (e) supports Watson's interpretation.  However, Watson overlooks Penal Code section 7, which provides that when construing words and phrases throughout the Penal Code, "the singular number includes the plural, and the plural the singular."  (See Evid. Code, § 10 [same].)  "The rule of construction enunciated in [Penal Code] section 7 is no mere rubric—it is the law."  (*People v. Jones* (1988) 46 Cal.3d 585, 593.)  Further, the statute's use of "the," a grammatical article which qualifies "underlying felony," does not mandate the singular.  (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 464–465 [assuming that statute directing " '[t]he singular number includes the plural' " [Lab. Code, § 13] applies to grammatical articles].)  Applying the rule in Penal Code section 7 here supports the conclusion that "underlying felony" is susceptible of either singular or plural meaning depending on context.  Viewed in this way, the Legislature's use of the singular form was not necessarily intended to restrict courts to designating only one underlying felony under Penal Code section 1170.95, subdivision (e).

13

Applying section 7's rule makes sense in this context, when considering that multiple felonies can and do form the basis for felony-murder liability in certain cases. It is true that proof of the commission of one of the enumerated felonies would be sufficient to support felony-murder liability (§ 189), and thus it is often the case that only one underlying felony is involved. However, as the People note, "in some cases a killing occurs during the perpetration of more than one enumerated felony." (See, e.g., *People v. Lewis* (2001) 25 Cal.4th 610, 623, 642–644, 678 (*Lewis*) [finding sufficient evidence that defendant had requisite mental state for robbery and burglary to sustain conviction of first degree felony murder; affirming special circumstances of robbery murder and burglary murder, as well as convictions on separately charged burglary and robbery counts]; *People v. Horning* (2004) 34 Cal.4th 871, 903 [upholding felony-murder conviction based on evidence "that defendant entered the house with the intent to commit theft, i.e., that he committed burglary [citation], and that he killed the victim during the course of a robbery"]; *People v. Osband* (1996) 13 Cal.4th 622, 653–655, 657–658, 691 [holding "a rational trier of fact could surely have found beyond a reasonable doubt that defendant perpetrated felony murder and committed all three underlying felonies [of burglary, robbery, and rape] charged"].)

In addition, CALCRIM No. 540A, the jury instruction listing the elements of first degree felony murder, contemplates that multiple felonies may underlie a felony-murder conviction. In relevant part, it states: "To prove that the defendant is guilty of first degree murder under this theory [of felony murder], the People must prove that: [¶] 1. The defendant committed [or attempted to commit] _____ <insert felony or felonies from Pen. Code, § 189>; [¶] 2. The defendant intended to commit _____ <insert felony or felonies from Pen. Code, § 189>; [¶] AND [¶] 3. While committing [or

14

attempting to commit], _____ <insert felony or felonies from Pen. Code, § 189>
the defendant caused the death of another person." (CALCRIM No. 540A,
first bracketed insertion added.)

The facts here present another example of a case in which the basis for
felony-murder liability is more than one felony. As discussed *ante*, Watson
testified he and his two accomplices entered Castle's hotel room with the
specific intent to grab him and steal money from him. This evidence
establishes beyond a reasonable doubt that Watson aided and abetted both a
burglary and a robbery prior to Castle's killing.[6] (See *Lewis, supra*, 25
Cal.4th at p. 642 [felony-murder robbery requires intent "to steal the victim's
property before or during the fatal assault"; felony-murder burglary requires
proof of entry into a "residence with the intent to commit a felony or theft"];
*People v. Melton* (1988) 44 Cal.3d 713, 767 ["Robbery involves an assaultive
invasion of personal integrity; burglary a separate invasion of the sanctity of
the [dwelling]"]; see also *People v. Villalobos* (2006) 145 Cal.App.4th 310, 321
[hotel or motel room being used for habitation, regardless of duration, is an
inhabited dwelling for purposes of first degree robbery and burglary].)
Watson does not contend otherwise. Indeed, he does not argue that he could
not have been charged with both burglary and robbery at the outset of his
case.

The cases discussed *ante*, as well as the facts in this case, clearly
illustrate that felony-murder liability may be predicated on more than one

---

[6] In his reply brief, Watson states, "There was no trial and the factual
basis upon which the Superior Court appeared to be acting in re-sentencing
was a short statement contained in the petition itself." This is inaccurate.
The evidence included Watson's testimony at the October 23, 2019 hearing on
his section 1170.95 petition and a transcript of a June 2013 parole
consideration hearing. The parties do not dispute that the court was
permitted to consider such evidence.

felony. Viewed in this context, it is reasonable to apply section 7's rule here and construe "underlying felony" in section 1170.95, subdivision (e) to include a plural meaning. The plain language of the statute thus confirms that the Legislature did not intend to require courts to designate only one felony in all cases.

We are mindful that the Supreme Court has said section 7's rule would be a "slim reed" upon which to resolve statutory questions where it leads to an interpretation that " 'depart[s] [from] our criminal jurisprudence,' " results in an absurd consequence, or "runs counter to" the legislative purpose and history. (*People v. Navarro* (2007) 40 Cal.4th 668, 680.) However, these concerns are not present here, as explained in our discussion *post* on the legislative purpose and history of section 1170.95. Nonetheless, we put aside the general rule in section 7 and look to another rule of construction that requires us to view the overall statutory context: "Rules of statutory construction obligate us to read a statute, and its various subdivisions, as a cohesive whole." (*People v. Marcus* (2020) 45 Cal.App.5th 201, 213–214.) We therefore interpret subdivision (e) in light of section 1170.95's other subdivisions. Applying this rule supports the conclusion that section 1170.95, subdivision (e) should not be read as narrowly as Watson proposes.

*Howard* is instructive on this point. In that case, Howard was convicted of first degree felony murder with a felony-murder special circumstance that he was engaged in the commission of a residential burglary. (*Howard, supra*, 50 Cal.App.5th at p. 732.) He was sentenced to life without the possibility of parole. (*Ibid.*) Howard was not separately charged with burglary, and at trial the jury was only instructed on the general law of burglary without reference to degree. (*Id.* at pp. 731, 732.) On appeal, the appellate court found sufficient evidence that Howard aided and

16

abetted a residential burglary but reversed the felony-murder-burglary circumstance and resentenced him to 25 years to life. (*Id.* at pp. 732–733.)

On remand, Howard petitioned to vacate his murder conviction and for resentencing under section 1170.95. (*Howard, supra*, 50 Cal.App.5th at p. 733.) The parties agreed the murder conviction should be vacated, and the court granted the petition and vacated the conviction. (*Ibid.*) The parties also agreed that the underlying felony for resentencing purposes was burglary but disagreed on its degree. (*Id.* at pp.733–734, 736.) Because Howard was not charged with or convicted of residential burglary, the defense argued the underlying felony could only be second degree burglary. (*Id.* at pp. 733–734.) The court rejected the argument and designated the underlying felony as first degree burglary. (*Id.* at p. 734.) Howard again appealed, arguing that the sentence for first degree burglary was unauthorized because it, among other things, contravened the plain language of section 1170.95. (*Id.* at p. 730.)

The appellate court affirmed. (*Howard, supra*, 50 Cal.App.5th at p. 730.) The court first noted that the evidence at trial was uncontroverted that the burglarized building was a residence and therefore the offense underlying Howard's felony-murder conviction was first degree burglary. (*Id.* at p. 738.) It then explained that nothing in subdivision (e) "direct[s] the court to impose the lesser degree of the felony offense. Had the Legislature intended to dictate such a result, 'it easily could have done so.' [Citation.]" (*Ibid.*) The court therefore rejected Howard's argument that "section 1170.95 subdivision (e) requires the trial court to designate the lesser degree of the underlying felony—even when the evidence at trial shows the commission of the greater degree . . . ." (*Ibid.*)

The court also read subdivision (e) of section 1170.95 in relation to subdivision (d)(3), which concerns the determination of the petitioner's eligibility for statutory relief. (*Howard, supra*, 50 Cal.App.5th at p. 739.) The court explained: "Subdivision (d)(3) contains express language regarding the prosecutor's burden to prove the petitioner is not entitled to relief. It also identifies the evidence the court may consider when making an eligibility determination. (§ 1170.95, subd. (d)(3).) Subdivision (e) contains no such language. Reading subdivisions (d)(3) and (e) together suggests the Legislature knew how to circumscribe the court's redesignation decisionmaking power and declined to do so. Comparing these provisions supports our conclusion that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e)." (*Ibid.*)

We agree with the *Howard* court's reasoning that reading section 1170.95, subdivisions (d)(3) and (e) together reflects a legislative intent to grant trial courts flexibility in designating the underlying offense for resentencing purposes. Watson's contention that subdivision (e) requires a court to redesignate a vacated murder conviction as only one underlying felony—even when the evidence shows beyond dispute the commission of more than one underlying felony—would run directly contrary to this principle.

Watson then points us to section 1170.95, subdivision (d)(1) to suggest that construing subdivision (e) to allow courts to designate multiple felonies would create an internal conflict within the statute. Subdivision (d)(1) provides that "the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner

18

had not been previously been [*sic*] sentenced, provided that the new sentence, if any, *is not greater than the initial sentence.*"  (Italics added.)  Watson contends, "By finding [him] guilty of both burglary and robbery, the court imposed the additional consequence that [he] now has two prior strike convictions" within the meaning of the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12).  According to Watson, "the imposition of this additional consequence after granting the petition violates subdivision (d)(1) . . . ."

To the extent Watson contends the court's designation of two felony convictions in this case implicates the Three Strikes law, it is prematurely raised and we do not consider it on the merits.  The instant convictions could only affect Watson *if* he were to commit a third offense and *if* the prosecutor then seeks to use his prior convictions as a basis for sentence enhancement in a future, unrelated criminal action.  Only then would Watson be vulnerable to increased punishment for the subsequent offense under the Three Strikes law.  At this juncture, these issues are not ripe for decision.  Deciding whether the present offenses qualify as serious felonies for purposes of the Three Strikes law would constitute an advisory opinion relating to the hypothetical use of the current felony conviction to enhance punishment for a future offense.  Such a ruling would violate the well-settled rule that courts should "avoid advisory opinions on abstract propositions of law.  [Citations.]"  (*In re William M.* (1970) 3 Cal.3d 16, 23, fn. 14; see *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.)

In any event, a decision as to whether a prior offense qualifies as a "strike" is not made as of the date of the conviction on that offense, but rather at the time of the conviction on the *future* offense.  (See *People v. Green* (1995) 36 Cal.App.4th 280, 283 [under § 667, subd. (d)(1) "the court is presently required to look backward to see if, at the time of the conviction of the past

19

offense, such past offense qualified as a serious or violent offense under [the Three Strikes law]"]; accord, *People v. James* (2001) 91 Cal.App.4th 1147, 1150.) Further, even in the event of a future conviction, sentencing under the Three Strikes law is not a certainty. "Under the Three Strikes law a qualifying prior conviction must, *in the current case*, be pleaded and proved [citation], beyond a reasonable doubt [citations], and the defendant has a statutory right to a jury trial, at least on the issue whether the defendant suffered the prior conviction [citations]." (*People v. Bowden* (2002) 102 Cal.App.4th 387, 393.) Moreover, whether Watson's convictions after resentencing under section 1170.95 will then qualify to enhance the future sentence is also speculative in that the trial court retains discretion to strike prior conviction allegations in the interests of justice, pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527–528.[7] For all these reasons, we express no view on Watson's claim that the court's designation of two felonies implicates the Three Strikes law.

Accordingly, we conclude that the language of subdivision (e), viewed in context with the other subdivisions of section 1170.95, does not support Watson's construction that the court was required to designate only one underlying felony.

---

[7] Although we are not faced with that question in the present case, we note that section 1385 authorizes a trial court to strike a prior felony conviction and that our Supreme Court has "left open the possibility that 'there are some circumstances in which two prior felony convictions are so closely connected . . . that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.'" (*People v. Sanchez* (2001) 24 Cal.4th 983, 993, citing *People v. Benson* (1998) 18 Cal.4th 24, 36 & fn. 8; see, e.g., *People v. Burgos* (2004) 117 Cal.App.4th 1209, 1216–1217 [finding abuse of discretion in failing to dismiss a strike allegation where prior convictions for attempted carjacking and attempted robbery arose "from the same single act"].)

## 2. *Legislative Purpose and History*

Assuming that the language of the statute does not inexorably compel this conclusion, we may look to extrinsic aids, such as the statute's purpose and legislative history. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra*, 34 Cal.4th at p. 737.)

"In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration." (*People v. Canty* (2004) 32 Cal.4th 1266, 1280.) In an uncodified section of Senate Bill No. 1437, the Legislature declared, "Reform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e).) The new law was "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

The legislative history of Senate Bill No. 1437 echoes these purposes. An analysis of Senate Bill No. 1437 conducted by the Senate Committee on Public Safety states, "According to the author: [¶] SB 1437 seeks to restore proportional responsibility in the application of California's murder statute reserving the harshest punishments for those who intentionally planned or actually committed the killing." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended Feb. 16, 2018, p. 3.) An

21

analysis by the Assembly Committee on Public Safety also states, " 'The felony-murder doctrine is unnecessary and in many cases, unjust in that it violates the basic premise of individual moral culpability upon which our criminal law is based.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill. No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 1 [same].)

In addition, the legislative history of Senate Bill No. 1437 includes reference to *People v. Dillon* (1983) 34 Cal.3d 441, in which our Supreme Court referred to the felony-murder rule as " ' "barbaric" ' " and found that " 'in almost all cases in which it is applied it is unnecessary' and 'it *erodes the relation between criminal liability and moral culpability*' [citation]." (*Id.* at p. 463, italics added; Assem. Com. on Public Safety, Analysis of Sen. Bill. No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.) Additional analyses quote *People v. Cavitt* (2004) 33 Cal.4th 187, which explained: " 'The Legislature has said in effect that this deterrent purpose outweighs the normal legislative policy of examining the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice, deliberate or accidental, and calibrating our treatment of the person accordingly. Once a person perpetrates or attempts to perpetrate one of the enumerated felonies, then in the judgment of the Legislature, he [or she] is no longer entitled to *such fine judicial calibration*, but will be deemed guilty of first degree murder for any homicide committed in the course thereof.' " (*Id.* at p. 197, italics and bracketed insertion added; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended Feb. 16, 2018, pp. 6, 7; Sen. Rules Com., Off. of Sen. Floor

Analyses, 3d reading analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, pp. 3, 4, 6.)

Further, in evaluating the bill's fiscal impact, the Department of Finance noted, "It is difficult for the California Department of Corrections and Rehabilitation to estimate potential savings associated with the bill as it is dependent upon judicial discretion." (Dept. Finance, Enrolled Bill Rep. on Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Sept. 6, 2018, p. 1.)

The statements of the preamble and the legislative history of Senate Bill No. 1437 confirm the Legislature's intent to restore, within the context of felony-murder liability, the " 'normal legislative policy of examining the individual state of mind' " and affording defendants convicted of murder "fine judicial calibration" with respect to punishment. (*People v. Cavitt, supra*, 33 Cal.4th at p. 197.) Watson's interpretation of section 1170.95, subdivision (e) would thwart these goals. A construction that is more aligned with the statute's purpose and history is one that does not eliminate the discretion of the courts to designate more than one felony when necessary to "calibrate" a defendant's punishment to his or her culpability.

*Howard* is again instructive. There, the court considered the expressed purposes of Senate Bill No. 1437, which supported the trial court's decision to designate Howard's murder conviction as first degree burglary, rather than second degree burglary. (*Howard, supra*, 50 Cal.App.5th at p. 739.) The court explained: "[O]ur conclusion that section 1170.95 subdivision (e) did not require the trial court to redesignate Howard's conviction as second degree burglary is consistent with the statute's stated purpose, which is to 'eliminat[e] lengthy sentences which have been declared incommensurate with the culpability of defendants such as [Howard],' and instead punish a defendant according to his ' "own level of individual culpability" ' [Citation.]"

(*Ibid.*, first bracketed insertion added.)  Thus, "[b]y vacating Howard's murder conviction and designating that conviction as first degree burglary, the court calibrated Howard's punishment to his culpability for aiding and abetting a residential burglary.  [Citation.]"  (*Ibid.*)

We reach the same conclusion here.  As explained in the preceding part, the evidence establishes beyond dispute that Watson aided and abetted both a burglary and a robbery before his accomplice fatally stabbed Castle.  Accordingly, we agree with the People that by vacating Watson's murder conviction and designating that conviction as first degree burglary and robbery, the court, as in *Howard*, calibrated Watson's punishment to his culpability for committing both of those crimes.  To prohibit the court from doing so on the facts of this case would run contrary to the express purposes of the statute.  Further, adopting Watson's interpretation of subdivision (e) would bestow a windfall on Watson, who has already been afforded the " 'ameliorative benefits' " of the statute.  (*Howard, supra*, 50 Cal.App.5th at p. 735.)

In sum, we conclude the trial court did not err in designating Watson's vacated murder conviction as both first degree burglary and first degree robbery pursuant to section 1170.95, subdivision (e).

## III.   Parole Supervision

Watson also challenges his placement on parole supervision, contending that section 1170.95, subdivision (g) required the court to apply his excess custody credits to eliminate any imposed period of parole.  The People counter that the court had discretion under the statute to place Watson on parole.  However, the People agree with Watson that because the court did not specify a duration of parole, we should remand for that limited

24

purpose.[8]  We agree with the People that the court did not err in placing Watson on parole.  However, we will remand to permit the court to specify a parole period.

### A.  *The court did not err by placing Watson on parole supervision under section 1170.95, subdivision (g).*

The proper construction of section 1170.95, subdivision (g) presents an issue of statutory interpretation, which, as noted *ante*, is subject to de novo review.  (*People v. Gonzalez, supra*, 2 Cal.5th at p. 1141.)  In interpreting section 1170.95, subdivision (g), we do not write on a blank slate.  This court in *People v. Wilson* (2020) 53 Cal.App.5th 42 (*Wilson*) addressed the issue presented here—whether a court must apply the excess custody credits of a person who is resentenced under Senate Bill No. 1437 to reduce or eliminate the person's parole supervision period pursuant to section 1170.95, subdivision (g).  *Wilson* determined the answer to this question is "no."

Like Watson, the defendant in *Wilson* argued that the court erred in failing to apply the general rule that, in the ordinary situation of original sentencing, excess presentence credits can reduce a period of parole.  (*Wilson, supra*, 53 Cal.App.5th at pp. 47–48.)  That rule is reflected in sections 2900.5, subdivision (c) and 1170, subdivision (d)(3).  (See §§ 2900.5, subd. (c) ["For the

---

[8] Watson contends that his failure to object to his placement on parole does not forfeit the issue on appeal.  The People concede the point.  The forfeiture rule applies to sentencing errors.  (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.)  However, where a court imposes an "unauthorized sentence," the forfeiture rule does not apply.  (*People v. Smith* (2001) 24 Cal.4th 849, 852 [exception to forfeiture rule for " 'unauthorized sentences,' " which are ones that " 'could not lawfully be imposed under any circumstance in the particular case' "].)  Both parties assert that the court's failure to specify a period of parole supervision amounted to a failure to exercise "informed discretion."  (See *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)

purposes of this section, 'term of imprisonment' includes any period of imprisonment . . . ordered by a court . . . and also includes . . . *any period of imprisonment and parole, prior to discharge*" (italics added)], 1170, subd. (a)(3) [providing that the entire sentence shall be deemed to have been served where the precustody credit exceeds the imposed sentence and that the defendant "shall serve an applicable period of parole . . . *unless the in-custody credits equal the total sentence, including* both confinement time and the *period of parole*" (italics added)].)

Based on the language of section 1170.95, subdivision (g), as well as the provision's legislative history, the *Wilson* court "conclude[d] that these general principles regarding the applicability of custody credits towards parole periods do not apply to resentencing under section 1170.95." (*Wilson, supra*, 53 Cal.App.5th at p. 48.) Thus, it held that a "court is not required to mechanically apply excess custody credits to reduce or eliminate the parole period imposed at a resentencing pursuant section 1170.95 [*sic*]. Instead, and notwithstanding excess custody credits, the court may exercise its discretion when deciding whether to order a period of parole." (*Id.* at p. 46.)

On the interpretation question, the *Wilson* court analogized section 1170.95, subdivision (g) to section 1170.18, a resentencing provision enacted as part of Proposition 47. (See *Wilson, supra*, 53 Cal.App.5th at pp. 48–50.) The Proposition 47 statute, which resembled subdivision (g), reduced certain nonserious, nonviolent crimes from felonies to misdemeanors, and allowed persons with a felony sentence to petition for a misdemeanor sentence. (See *ibid*.) The *Wilson* court cited the Supreme Court's decision in *People v. Morales* (2016) 63 Cal.4th 399 (*Morales*), which in turn interpreted the Proposition 47 statute. (*Wilson*, at pp. 48–50.) Applying principles of statutory interpretation, the *Morales* court concluded that credit for time

26

served does not reduce a parole period imposed at resentencing under Proposition 47.  (*Morales, supra*, 63 Cal.4th at p. 403.)

The *Morales* court observed that although "section 2900.5 states two things . . . :  (1) the person is entitled to credit for time served, and (2) the credit can reduce or eliminate the period of parole," the Proposition 47 statute "states the first of these but *not* the second."  (*Morales, supra*, 63 Cal.4th at p. 406.)  The Proposition 47 statute "[i]nstead . . . states the person is to receive credit for time served *and* is subject to parole."  (*Morales*, at p. 406.)  The court explained that the Proposition 47 statute thus establishes a "seemingly mandatory parole requirement (subject to the court's discretion) . . . ."  (*Id.* at p. 405.)  Further, because the Proposition 47 statute says nothing about applying excess credit for time served to reduce the period of parole, the court had "no reason . . . to assume the voters believed . . . credit for time served could reduce the period of parole" when they enacted Proposition 47.  (*Id.* at p. 406.)

Just as the *Morales* court concluded the Proposition 47 statute does not require using excess credit to reduce or eliminate the parole period, the *Wilson* court concluded that the words "credit for time served" in section 1170.95, subdivision (g) do not require a court to apply excess credit against a person's parole supervision period.  (*Wilson, supra*, 53 Cal.App.5th at p. 50.)  The *Wilson* court explained that section 1170.95, subdivision (g)—like the Proposition 47 statute—"states that (1) the person is entitled to credit for time served *and* (2) the court may order a parole period."  (*Wilson*, at p. 50.)  Section 1170.95, subdivision (g), however, "*does not state*—as section 2900.5 states—that the credit may be used to reduce or eliminate any parole period the court may impose."  (*Wilson*, at p. 50.)  To do so would require the court to

add words to the statute that do not exist, which it declined to do. (*Id.* at p. 52.)

In addition to the statutory text, the *Wilson* court stated that the legislative history indicated an intent to " 'permit judges to impose a term of parole supervision upon completion of the term imposed under any resentencing' . . . ." (*Wilson, supra*, 53 Cal.App.5th at p. 50.) Further, the court opined, "While [the statute's] general objective is to treat offenders with uniformity, it also serves the 'objective of parole'—to provide 'supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society.' " (*Id.* at pp. 50–51.) Finally, it concluded that "to read section 1170.95 as Wilson urges us to do would result in parole being eliminated or reduced in many cases governed by section 1170.95 as defendants seeking relief under that section will have been serving lengthy felony sentences for murder by the time they petition for resentencing." (*Id.* at p. 51.) We also observe that in *People v. Lamoureux* (2020) 57 Cal.App.5th 136 (*Lamoureux*), the Fourth Appellate District, Division One, relying on *Morales* and citing *Wilson* with approval, also concluded that section 1170.95, subdivision (g) does not require a court to automatically apply excess custody credits to offset a parole period. (*Lamoureux, supra*, 57 Cal.5th at pp. 142–145.)

Watson argues *Morales* is inapplicable because it had no occasion to discuss "the sentencing provisions in section 1170 which apply only to felony sentencing." As noted *ante*, the pertinent provision in section 1170 is subdivision (a)(3), which *Wilson* explains "provides that 'the person is entitled to credit for time served and that the credit can reduce or eliminate any period of parole.' " (*Wilson, supra*, 53 Cal.App.5th at p. 51.) Watson then

28

contends that section 1170.95, subdivision (g) should be interpreted to ensure consistency with section 1170, subdivision (a)(3).

The *Wilson* court rejected a similar argument. (See *Wilson, supra*, 53 Cal.App.5th at pp. 51–52.) We explained that although the *Morales* court did not discuss section 1170, subdivision (a)(3), its "discussion of section 2900.5 . . . is equally applicable to section 1170(a)(3) as both sections are identical as to the purpose and rules concerning the application of credit for time served to reduce or eliminate a term of imprisonment and parole. [Citation.] As we must assume the Legislature had in mind section 1170(a)(3) when enacting section 1170.95, it was aware of section 1170(a)(3)'s rule allowing credit for time served and credit to reduce or eliminate any period of parole. We may further assume the Legislature was aware that the purpose behind the rule in section 1170(a)(3), like section 2900.5, was 'to equalize the treatment of . . . those who could not post bail.' [Citation.] Consequently, had the Legislature not intended to leave the issue of parole to the trial court's discretion in section 1170.95, it could have easily made specific reference to section 1170(a)(3) or otherwise modified the court's right to impose a parole period. [Citations.] Instead, the Legislature gave the trial court unfettered discretion to impose a period of parole at the completion of any sentence imposed under section 1170.95." (*Wilson*, at pp. 51–52.) Section 1170, subdivision (a)(3), therefore, does not support Watson's position.

Watson also contends that the Legislature, "in making application of 1170.95 retroactive to all cases based on felony murder, . . . had to have been aware that there would be individuals who had served length prison sentences that would now be vacated." (*Sic.*) He contends that the Legislature intended to address situations like his, "where he had served so many additional years beyond that imposed at re-sentencing . . . ." According

to Watson, "[p]ermitting the trial judge to consider whether to impose parole does not indicate an intention that section 2900.5's provision for credit for time served on a term of parole should not apply in this context." We disagree. Again, we point to *Wilson*, where we concluded that the language of section 1170.95, subdivision (g) itself and the provision's legislative history indicate an intent that section 2900.5 not apply in the context of resentencing under section 1170.95. (See *Wilson, supra*, 53 Cal.App.5th at pp. 50–51.)

To the extent Watson is suggesting that failing to apply excess credits to eliminate a parole period does not comport with the statute's purpose to " 'more equitably sentence offenders in accordance with their involvement in homicides,' " we are unconvinced. The *Wilson* court explained, "While [section 1170.95's] general objective is to treat offenders with uniformity, it also serves the 'objective of parole'—to provide 'supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society.' [Citation.]" (*Wilson, supra*, 53 Cal.App.5th at pp. 50–51.) We thus held "it is consistent with the legislative purpose behind section 1170.95 to allow a court to impose a parole period even where excess custody credits exist." (*Id.* at p. 51.)

Next, Watson takes the position that the court "only had the authority to put [him] on parole for up to 3 years following completion of his 6-year sentence." As best we can discern, Watson argues that section 1170.95, subdivision (g) prohibits a resentenced person from being subject to parole supervision at any point later than three years after the completion of the person's new custodial term. Watson seems to suggest that section 1170.95, subdivision (g) establishes a deadline on a person's eligibility for parole.

The *Lamoureux* court rejected a similar argument. (*Lamoureux, supra*, 57 Cal.App.5th at pp. 149–150.) It construed the syntax of section 1170.95,

30

subdivision (g) and concluded "the most natural reading of the statute is . . . that a person may be subject to parole supervision following the completion of the sentence and, furthermore, the parole supervision period may be up to three years in duration." (*Lamoureux, supra*, at p. 149.) The court explained that the statute thus "does not establish a three-year deadline after which a resentenced person may no longer be subject to parole . . . ." (*Id.* at p. 150.) It also found support in the *Morales* court's implied determination that the specified one-year period of parole in the Proposition 47 statute "established the maximum *duration* of the parole period, not a deadline akin to a statute of limitations." (*Lamoureux*, at p. 149, citing *Morales, supra*, 63 Cal.4th at p. 405.) *Lamoureux* explained that these conclusions in *Morales* "confirm our interpretation of the nearly identical statute at issue here, section 1170.95, subdivision (g)." (*Lamoureux*, at p. 149.)

We agree with the reasoning in *Lamoureux*. Assuming Watson completed his sentence when his new six-year sentence expired, the court had authority to place him on parole supervision for up to three years in duration following his release from custody. (See *Lamoureux, supra*, 57 Cal.App.5th at p. 150.) In sum, "we see no basis to set aside the trial court's refusal to apply excess custody credits to eliminate the period of parole imposed at the resentencing under section 1170.95." (*Wilson, supra*, 53 Cal.App.5th at p. 52.)

B. ***Remand is appropriate to permit the court to select a period of parole.***

Watson argues that even if the court had discretion to place him on parole supervision, the court nonetheless erred in failing to exercise its discretion and select a period of parole. The People agree, as do we.

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which

31

is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record. [Citation.]" (*People v. Belmontes, supra*, 34 Cal.3d at p. 348, fn. 8.) During resentencing in this case, the court stated, "I believe you're still subject to a term of parole for this violation. You may be released today or tomorrow. If you are, I'm ordering you to go to parole within 48 hours if they don't contact you ahead of time." However, the court did not select a duration for parole supervision. Since the record does not indicate the court was aware that it had the discretion to impose a parole period "for up to three years following the completion of [Watson's] sentence" (§ 1170.95, subd. (g)), the appropriate remedy is to remand for resentencing. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Accordingly, we remand for the limited purpose of allowing the court to exercise its discretion to specify the duration of Watson's parole period. On remand, the court may properly consider the fact that Watson has served nearly 32 years in custody, as well as over one and a half years of parole supervision since he was ordered released from custody in late October 2019.

## IV.    Restitution Fine

Watson also challenges the $1,800 restitution fine (§ 1202.4), on the grounds that the amount imposed violates the constitutional proscriptions against double jeopardy and ex post facto laws, as well as the plain language of section 1170.95, subdivision (d).

The People contend Watson has forfeited this argument. We agree. (See *People v. Trujillo, supra,* 60 Cal.4th at p. 856 [forfeiture rule applies to sentencing errors]; *In re Seaton* (2004) 34 Cal.4th 193, 197–198 [forfeiture rule applies to alleged constitutional violations]; see also *Lamoureux, supra*,

57 Cal.App.5th at pp. 151–152 [exceptions to forfeiture rule based on "unauthorized sentence" or threatened ineffective assistance of counsel claim did not apply to failure to object to restitution fine].)

Even if we were to overlook the forfeiture, we need not decide whether the court erred in setting the restitution fine at $1,800. Whether the proper amount for the fine was $1,800 or a lesser amount, we agree with Watson that his excess custody credits should have been applied to fully satisfy the fine. (See *People v. Morris* (2015) 242 Cal.App.4th 94, 101–103 (*Morris*) [deeming defendant's restitution fine satisfied under version of section 2900.5 in effect at the time of defendant's sentence]; *Lamoureux, supra*, 57 Cal.App.5th at pp. 152–154 [same].) The People do not dispute this point.

The ex post facto clause applies to Watson's restitution fine and therefore the fine is governed by the statutes in effect at the time of his offense. (*Morris, supra*, 242 Cal.App.4th at p. 102.) In 1987, section 2900.5, subdivision (a) provided in pertinent part as follows: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . days credited to the period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment, or *credited to any fine which may be imposed*, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. *In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and*

33

*thereafter such remaining days, if any, shall be applied to the fine.*"[9]  (Italics added.)

Under the plain terms of former section 2900.5, subdivision (a), the trial court was required to apply Watson's excess custody credits to reduce his $1,800 restitution fine at a rate of not less than $30 per day.  Watson had a total of 11,714 custody credits.  Thus, under former section 2900.5, Watson was entitled to have those credits first applied to his new six-year term of imprisonment, which constitutes approximately 2,190 days, and then, with the remainder, to his restitution fine.  The total days served of 11,714 days, less the 2,190 days applied to the custodial term, leaves 9,524 days to be credited against the restitution fine.  When multiplied by a rate of $30 per day, the credit of 9,524 days far exceeds $1,800.  As a result, we deem the $1,800 restitution fine to have been satisfied in full.

## V.     Parole Revocation Restitution Fine

Watson further argues, and the People agree, that the court's imposition of the $1,800 parole revocation restitution fine under section 1202.45 violates the federal and California prohibitions on ex post facto laws. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.)  The ban on ex post facto laws prohibits imposing the section 1202.45 restitution fine on a person who committed the underlying offense before the statute authorizing the fine was enacted.  (*People v. Callejas* (2000) 85 Cal.App.4th 667, 676; accord, *People v. Flores* (2009) 176 Cal.App.4th 1171, 1181–1182.)  Watson committed the underlying crimes in 1987.  Section 1202.45 went into effect in 1995.  (Stats. 1995, ch. 313, § 6.)  Hence, the fine must be stricken even

---

[9] In 2013, the Legislature amended section 2900.5, subdivision (a) by eliminating restitution fines from the fines to which excess custody credits may be applied.  (Stats. 2013, ch. 59, § 7.)

34

though Watson did not object to it in the trial court.  This is so because the fine was " 'unauthorized,' " in that "it could not lawfully be imposed under any circumstance" in this case.  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

We decline to apply the forfeiture rule to foreclose an ineffective assistance of counsel claim since we can see no conceivable tactical explanation for defense counsel's failure to advise the court that section 1202.45 was not in effect at the time of the offenses.  (See *People v. Kendrick* (2014) 226 Cal.App.4th 769, 778–780.)

### DISPOSITION

The case is remanded to the trial court for the limited purpose of determining the duration of Watson's parole period in accordance with section 1170.95, subdivision (g).  The judgment is modified to reflect that (1) the $1,800 parole revocation restitution fine under section 1202.45 is stricken; and (2) the $1,800 restitution fine imposed under section 1202.4 is deemed satisfied in full by application of Watson's excess custody credits pursuant to section 2900.5.  As so modified, the judgment is affirmed.

The clerk of the superior court is directed to modify the amended abstract of judgment to reflect this modification and to forward a copy of the new amended abstract to the Department of Corrections and Rehabilitation.

_____

                              Wiseman, J.*


WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Jackson, J.


A159284/*People v. Donald Alexander Watson*

---

     * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

36

A159284/People v. Donald Alexander Watson

Trial Court:          Superior Court of the County of Solano

Trial Judge:         John B. Ellis, J.

Counsel:             Janice M. Lagerlof, under appointment by the Court of
                     Appeal, for Defendant and Appellant.

                     Xavier Becerra, Attorney General, Lance E. Winters and
                     Jeffrey M. Laurence, Assistant Attorneys General,
                     René A. Chacón and Bruce Ortega, Deputy Attorneys
                     General, for Plaintiff and Respondent.